MESCH, CLARK & ROTHSCHILD, P.C.
259 North Meyer Avenue
Tucson, Arizona 85701
Phone: (520) 624-8886
Fax: (520) 798-1037
Email: ecfbk@mcrazlaw.com
mmcgrath@mcrazlaw.com
fpetersen@mcrazlaw.com

AND

MICHAEL W. CARMEL, LTD.
80 E. Columbus
Phoenix, Arizona 85012-2334
Phone: (602) 264-4965
Fax: (602) 277-0144
Email: michael@mcarmellaw.com

Proposed Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 Proceedings |
| BASHAS' INC., Debtor | Case No. 2:09-bk-16050-JMM |
| BASHAS' LEASECO, INC., Debtor | Case No. 2:09-bk-16051-SSC |
| SPORTSMAN'S LLC, Debtor | Case No. 2:09-bk-16052-SSC |

**DEBTORS' EMERGENCY MOTION TO OBTAIN POST-PETITION FINANCING ON A SECURED BASIS AND SET FINAL HEARING**

Bashas' Inc. ("Bashas'"), Bashas' Leaseco Inc. ("Leaseco"), and Sportsman's, LLC ("Sportsman's") (collectively the "Debtors in possession"), pursuant to 11 U.S.C. §364(c)(2) and Rule 4001, Fed. R. Bankr. P. move this Court to authorize them to incur post-petition debt secured by a first priority lien on the Debtors' real property. This

*Motion* is supported by the accompanying Memoranda of Points and Authorities and Exhibits incorporated by this reference.

DATED July 13, 2009.    MESCH, CLARK & ROTHSCHILD, P.C.


By  s/Frederick J. Petersen, #19944
   Lowell E. Rothschild
   Michael McGrath
   Scott H. Gan
   Brenda Moody Whinery
   Frederick J. Petersen
   Proposed Attorneys for Debtors

- and -

MICHAEL W. CARMEL, LTD.
   Michael W. Carmel
   Co-Counsel for Debtors

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION AND VENUE

On July 12, 2009 (the "Petition Date"), each of the Debtors filed a voluntary Petition for relief under Chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their businesses as Debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. This Court has jurisdiction to consider this *Motion* pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### II. COMPLIANCE WITH GENERAL ORDER 82

Pursuant to General Order 82, Local Rules of Bankruptcy Procedure for the District of Arizona, Debtors note this *Motion* contains findings, conclusions, holdings or

orders as to the amount of secured debt or the validity, perfection and scope of the security interest securing pre- and post-petition debt, that could purportedly affect the rights of the estate or anyone other than the Debtors in possession and the secured creditor

### III. IINTRODUCTION

Bashas' Inc. owns and operates approximately 158 retail grocery stores located throughout Arizona. Bashas employs more than 10,000 workers in these stores. In support of this *Motion*, the Debtors incorporate by reference the factual statements contained in the Affidavit of Mike Proulx in support of first day motions.

### IV. THE DEBTORS' FINANCING NEEDS

The Debtors cannot operate their grocery store business without operating funds. Their business depends on cash to acquire new assets such as produce, dry goods, meats, poultry, fish and other inventory necessary to properly operate their stores. Attached to this *Motion* is the Debtors' proposed budget for the next thirteen (13) weeks. (See Exhibit 1, attached.) Based on the budget, it is expected that the Debtors will experience occasional weekly shortfalls necessitating additional financing contemplated by this *Motion*.

The proposed Debtors in possession financing is necessary to keep the Debtors operational while a reorganization plan is prepared. Having an assured cash flow allows the Debtors to encourage employees, customers and vendors to deal with the Debtors as a going concern, which will maximize the recovery to creditors. The Debtors' proposed budget contains conservative assumptions of sales. If the Debtors exceed those sales

projections, both revenue and expenses will increase as well. The Debtors' budget identifies anticipated sources and uses of cash on a weekly basis.

The Debtors have determined that this proposed post-petition debtors in possession financing is necessary to maintain the Debtors' business relationships with vendors and suppliers, and to meet their working capital needs. To ensure the Debtors' business operations are not interrupted, and to ensure that these Chapter 11 cases proceed optimally, the Debtors have concluded that obtaining post-petition financing is necessary and in the best interest of the Debtors and their estates.

Indeed, without the DIP Loan, the Debtors' cases would be unstable, and the Debtors could not pursue reorganization to the detriment of all creditors. The Debtors' ability to incur this post-petition debt is integral to the success of these Chapter 11 cases. It is axiomatic that the Debtors' use of cash during the pendency of these Chapter 11 cases is absolutely necessary to allow the Debtors to continue to operate.

## V. **THE NEW DIP LOAN PROPOSAL**

The Debtors have searched for DIP financing. See Proulx Declaration. The Debtors were unable to locate a proposed debtor in possession lender willing to extend credit to the Debtors on an unsecured basis allowable under § 503(b)(1) of this title as an administrative expense. The Debtors propose to enter into a loan (the "DIP Loan") with Grace Financing Group, LLC ("DIP Lender") subject to this Court's approval. Terms of the proposed DIP Loan are reflected in the Loan Agreement attached as Exhibit 2.

The Debtors propose to borrow post petition up to $43 million from the DIP

Lender. The Debtors have previously borrowed $2 million pre-petition from the DIP Lender who agreed to lend up to a total of $45 million to the Debtors secured by a first priority lien on the Debtors unencumbered real property. The Debtors have already executed loan documents for this proposed pre and post petition loan. (See Exhibit 1).

A summary of the important terms of the proposed DIP Loan is set forth in Exhibit 1 and need not be reiterated here. Nonetheless, the Debtors specifically note the following provisions of the term sheet and the proposed Interim Order:

1) <u>Maturity date</u>. Any and all current outstanding principal amount of the DIP Loan plus any unpaid accrued interest is due and payable on the earlier: (i) a date that is two years after the commencement of the Debtors' bankruptcy cases; (ii) the entry of an order confirming a plan of reorganization pursuant to an order of this Court; or (iii) the termination of the DIP Loan in accordance with the DIP loan documents.

2) <u>Pricing</u>. The effective interest rate for all post-petition advances is to accrue at eight percent (8%) per annum. Interest is payable quarterly in arrears. There are no origination fees associated with this loan.

3) <u>Payments</u>. Payment of current outstanding principal, accrued interest and fees will be payable at the Maturity Date. The Debtors have the right to pre-pay the DIP Loan in an amount equal to 100% of the outstanding principal plus any unpaid accrued interest without penalty.

4) <u>Events of Default</u>. The DIP loan documents will contain the usual and customary events of default, including dismissal or conversion of these Chapter 11 cases,

and a merger or other change of control transaction.

  5) <u>Carve-Out</u>.  The DIP Lender agrees that the liens granted under the DIP Loan will be subject to the following "Carve-Out" expenses:

  (a) statutory fees payable to the United States Trustee pursuant to 28 U.S.C. §1930;

  (b) fees payable to the Clerk of the Court.

The DIP Lender's proposal is extremely favorable under the circumstances.  The DIP Lender has agreed not to prime any parties' security interest.  Without the DIP Lender's commitment to the DIP Loan and the working capital it provides, these cases would likely be unfeasible from their commencement.

## VI.  THE LAW

  The Bankruptcy Code authorizes a debtor in possession to obtain financing post-petition pursuant to § 364.  This section permits the Court, after notice and hearing, to authorize a debtor to obtain credit or the incurring of debt secured by a lien on property of the estate if the debtor is unable to obtain unsecured credit allowable as an administrative expense pursuant to §503(b)(1). In this regard § 364 provides:

> (c) If the trustee is unable to obtain unsecured credit allowable under § 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or incurring of debt –
> 
>              \*\*\*
> 
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien;

The Debtors have been unable to locate financing in exchange for administrative claims. As a result, the Debtors accepted the DIP Lender's proposal for post-petition

financing secured by a lien on real estate. *In re Snowshoe Company*, 789 F.2d 1085, 1088 (4th Cir. 1986) (the trustee contacted other financial institutions in the immediate geographic areas and was unsuccessful in obtaining unsecured credit); *In re 495 Central Park Avenue Corp.*, 136 B.R. 626, 630-31 (Bankr. S.D.N.Y. 1992) (unsuccessful attempt to secure financing from other sources justified senior priority loan under Bankruptcy Code §364); *In re Ames Dept. Stores, Inc.,* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (that the debtors had contacted four lenders satisfied the requirements of Bankruptcy Code §364 that debtors were unable to obtain comparable financing on an unsecured basis).

In these circumstances, the Bankruptcy Code imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable. *In re Snowshow Company,* 789 F.2d at 1088. There are few lenders likely to be able or willing to extend the necessary credit to the Debtors, it would be unrealistic and unnecessary to require the debtor to conduct an exhaustive search for financing. *See In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988).

As set forth above, and in the Proulx Declaration, in the months leading up to the Petition date, the Debtors solicited proposals for financing. After appropriate investigation and analysis, including careful and time-consuming deliberations among the Debtors' restructuring counsel and advisors, the Debtors reasonably concluded that the DIP Lender's proposal was the best alternative available to the Debtors. Accordingly, the Debtors have concluded in their business judgment that the DIP Loan is the most favorable for these estates, and it may provide an expedient resolution to these cases.

Consequently, the Debtors' efforts in this regard satisfy the statutory requirements of § 364(c).

The proposed terms of the DIP Loan are fair, reasonable and adequate in that these terms neither tilt the conduct of these cases nor prejudice the powers and rights the Bankruptcy Code confers for the benefit of all creditors. The purpose of the DIP Loan is to enable the Debtors to maintain the stability of their operations during these Chapter 11 cases. See *In re First South Savings Assoc.,* 820 F.2d 700, 710-15 (5th Cir., 1987); *In re Tenney Village Co.*, 104 B.R. 562, 568-69 (Bankr. D.N.H. 1989). With access to the DIP Loan, which includes immediate access of up to $14 million pending entry of the Final Order, and subsequent access up to an additional $29 million (a total of up to $43 million), the Debtors are confident that they can maintain the stability of their operations during the remainder of these Chapter 11 cases. In reaching this conclusion, the Debtors believe that the market generally, and vendors and customers specifically, often respond favorably to approval of a comprehensive debtor in possession financing package. The Debtors' ability to achieve their goals depends on unimpeded operations and the continued generation at the targeted levels of cash flow requiring access to working capital.

As described above, after appropriate investigation and analysis, the Debtors have concluded the DIP Loan is the best alternative available under the circumstances. Bankruptcy courts routinely defer to the Debtors' business judgment on most business decisions, including the decision to borrow money. See *Group of Instituional Investors vs. Chicago Mil. St. & Pac. Ry.,* 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.,* 47

B.R. 444, 449 (D. Colo., 1985) (business judgment should be left to the board room and not to the bankruptcy court); *In re Lifeguard Industries, Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio, 1983). More exacting scrutiny would slow the administration of the Debtors' estate and increase its costs, interfere with the Bankruptcy Code's provisions for private control of administration of the estates, and threaten the Court's ability to control a case impartially. *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1311 (5th Cir. 1985).

In general, a bankruptcy court should defer to a debtor's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *In re Curlew Valley Assoc.,* 14 B.R. 507, 511-13 (Bankr. D. Utah, 1981) (courts generally will not second guess a debtor's business decision when those decisions involve a business judgment made in good faith, upon a reasonable basis, and within the scope of authority granted under the Bankruptcy Code) *Curlew Valley*, 114 B.R. at 513-14.

The Debtors have exercised sound business judgment seeking advice from their restructuring advisors in determining that the DIP Loan is appropriate, and have satisfied the legal prerequisites to borrow under the DIP Loan. The terms of the DIP Loan are fair and reasonable and are in the best interest of their estates. Accordingly, under the Bankruptcy Code, §364(c), the Debtors should be granted authority to enter into the DIP Loan and to borrow funds from the DIP Lender on the basis described above.

**VI.  RELIEF REQUESTED**

The Debtors respectfully request this Court:

1) Grant Debtors' request for authority to enter into the DIP Loan on an interim basis;

2) Set a final hearing on Debtors' *Motion for Authority* to enter into the DIP Loan;

3) Enter a final order authorizing Debtors to enter into the DIP Loan; and

4) For such further relief as the Court deems appropriate.

DATED: July 13, 2009.    MESCH, CLARK & ROTHSCHILD, P.C.

- and -

MICHAEL W. CARMEL, LTD.


By s/Frederick J. Petersen, #19944
   Lowell E. Rothschild
   Michael McGrath
   Scott H. Gan
   Brenda M. Whinery
   Frederick J. Petersen

   Michael W. Carmel
   Proposed Attorneys for the Debtor

Copy mailed July 13, 2009, to:

Office of the U.S. Trustee
230 N. First Ave., Suite 204
Phoenix, AZ 85003-1706

304287