MESCH, CLARK & ROTHSCHILD, P.C.
259 North Meyer Avenue
Tucson, Arizona 85701
Phone: (520) 624-8886
Fax:   (520) 798-1037
Email: ecfbk@mcrazlaw.com
       mmcgrath@mcrazlaw.com
       fpetersen@mcrazlaw.com

AND

MICHAEL W. CARMEL, LTD.
80 E. Columbus
Phoenix, Arizona 85012-2334
Phone: (602) 264-4965
Fax:   (602) 277-0144
Email: michael@mcarmellaw.com

Proposed Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 Proceedings |
| BASHAS' INC., Debtor | Case No. 2:09-bk-16050-JMM |
| BASHAS' LEASECO, INC., Debtor | Case No. 2:09-bk-16051-SSC |
| SPORTSMAN'S LLC, Debtor | Case No. 2:09-bk-16052-SSC |

**MOTION FOR INTERIM AND FINAL ORDERS DETERMINING ADEQUATE ASSURANCE OF PAYMENT OF FUTURE UTILITY SERVICES**

BASHAS' INC. ("Bashas"), BASHAS' LEASECO, INC. ("Leaseco"), and SPORTSMAN'S, LLC ("Sportsmans") (collectively the "Debtors in possession"), file this Motion for entry of an interim order and a final order under 11 U.S.C. §366 determining adequate assurance of payment for future utility services. This Motion seeks immediate entry of an order granting the Motion. It is brought on an emergency basis on

expedited notice under Local Bankruptcy Rule 9103-1(h) to avoid immediate and irreparable harm to the Debtors' estates.

## I. BACKGROUND

1. On July 12, 2009 (the "Petition Date"), each of the Debtors filed a voluntary Petition for relief under Chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their businesses as debtors in possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

2. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §1334. This is a Court proceeding pursuant to 28 U.S.C. §157(b). Venue of this proceeding is proper pursuant to 28 U.S.C. §§1408 and 1409.

3. Bashas' Inc., owns and operates 158 retail grocery stores located throughout Arizona. Bashas' employs more than 10,000 workers in these stores.

## II. PROPOSED PROCEDURES FOR ADEQUATE ASSURANCE

The Debtors fully intend to pay all post-petition obligations owed to the utilities in a timely manner. The Debtors expect the cash flow from operations and existing cash on hand will be more than sufficient to pay all post-petition utility obligations.

In addition to the proceeds from cash flow and existing cash on hand, the Debtors have obtained commitment from the Debtors in possession financier, who has agreed to make available a DIP Loan that is projected to be more than sufficient to cover all operational costs, including the regular and timely payment of utility obligations, from the proceeds of such loan.

As of the filing, the Debtors have always timely paid utility obligations, according to the due dates established by the various utility companies. The Debtors believe that as of the filing date, they are current in all such obligations, based upon payments made in the ordinary course of business.

By separate motion, the Debtors have requested authority from the Court that all pre-petition checks issued in the ordinary course of business, but not honored by the various dispersing banks, be nevertheless honored post-petition, so as to not interfere or interrupt the Debtors' ordinary operations. The vendor checks sought to be honored include payments to various utility authorities, who may have been issued checks prior to the bankruptcy filing, which such checks have not cleared by the filing time. To the extent such utilities hold a pre-petition check that has not been cashed, the Debtors request the Court grant authority and direct the Debtors' banks to honor such checks.

The Debtors propose the projected cash flow, existing cash on hand, agreement to honor pre-petition checks that have not cleared, intent to continue paying bills currently owing, and the proceeds of the DIP Loan that are more than sufficient to cover all operating shortfalls is sufficient to create an adequate assurance of future payment for the utility companies. As a result of these various payment sources, and collateral available for the benefit of the utilities, Debtors request that the Court determine, on an interim basis, that no advanced deposits, or other payments, other than those deposits already provided to various utility services, be required.

The Debtors respectfully submit that the DIP Loan, in conjunction with the Debtors' ability to pay for future utility services in the ordinary course of business and any existing deposits already held by the utilities constitute sufficient adequate assurance to the utilities of future payment under Bankruptcy Code §366.

**III.  BASIS FOR RELIEF**

Continued and uninterrupted utility service is essential to the Debtors' ability to sustain their business operations during these cases. The Debtors are required to oversee the operations of their businesses and manage properties associated with the operation of their businesses. Any interruption in utility service would severely disrupt the Debtors' business operations, their restructuring efforts, and jeopardize the Debtors' ability to preserve the value of the estates.

In the normal course of their business, the Debtors use of electricity, gas, water, telephone, telecommunications, cellular phone, Internet, and other utility services provided by the utilities. The Debtors' ability to effectively oversee and manage their businesses during the pendency of these cases is dependent on the uninterrupted provisions of services by the utilities, and the Debtors' ability to preserve the value of the estates will be irreparably damaged if the utilities do not continue to provide these services.

The interruption of electrical service prevents wholly the operation of the Debtors' various grocery stores. Therefore, the continued and uninterrupted electric service is critical to the Debtors. The Debtors are similarly dependent on the continuation of other

utility services such as telephone, Internet services, water and gas.

The Debtors historically have made timely and complete payments with respect to utilities before the Petition Date. It is estimated that the monthly utility expenditures are approximately $3.5 million. As of the Petition Date, the Debtors believe that all such utility payments were paid, on a timely basis, in the ordinary course of business. The only amounts remaining outstanding are for pre-petition utility services, for which a bill has not been delivered, or for which a bill has not yet become due. Some or all of the amounts owing to utilities on account of pre-petition services result from the fact that the Petition Date occurred during the middle of the utility's billing cycle, and/or that certain checks issued by the Debtors have not yet cleared banks. The Debtors have requested authority from this Court that any checks issued pre-bankruptcy be honored, and to compel the banks to pay such monies for the benefit of the utilities.

Even though some outstanding arrearages may exist with respect to some of the utilities, the Debtors believe that any utility seeking to terminate services would be doing so as an automatic reaction to a filing for relief under the Bankruptcy Code. The Debtors have and will continue to have sufficient funds to make timely payments to utilities for all post-petition utility services.

Bankruptcy Code §366(c) defines "assurance of payment" to include certain specified forms of security. It is important to recognize, however, that the recent amendments to §366 did not replace the fundamental premise of Bankruptcy Code §366(b) or the pertinent case law construing that section. Accordingly, the courts remain

free to determine whether a utility has been provided with adequate assurance of payment. The Bankruptcy Code prevents the Court from considering certain facts in reaching this determination, nothing in that section prohibits a court from determining that the amount of such adequate assurance of payment is zero. Therefore, the Court can determine that the amount of adequate assurance of payment is zero, or some other nominal amount.

11 U.S.C. §366 only requires that the assurance of payment be "adequate." Courts construing §366(b) have long recognized that adequate assurance of performance does not constitute an absolute guarantee of payment. *Steinebach v. Tucson Electric Power Company*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("adequate assurance of payment is not, however, absolute assurance . . . all §366(b) requires is that a utility be protected from an unreasonable risk of nonpayment.")

Furthermore, courts have recognized that "in deciding what constitutes 'adequate assurance' in a given case, a bankruptcy court must 'focus upon the need of the utility for assurance, and to require that the debtor supply no more than that since the debtor almost perforce has a conflicting need to conserve scarce financial resources'." *See Virginia Electric & Power Company v. Caldor, Inc.*, 117 F.3d 646, 650 (2nd Cir. 1997).

**WHEREFORE**, the Debtors respectfully request that the Court enter an interim and final order (a) determining that the utilities have been provided with adequate assurance of payment within the meaning of Bankruptcy Code §366, pending the entry of a final order; (b) prohibiting the utilities from altering, refusing, or discontinuing services on account of pre-petition amounts outstanding or the commencement of these cases; (c)

determining that Debtors are not required to provide any additional adequate assurance beyond what is proposed in this Motion; and (d) granting such other relief as is just and proper.

DATED: July 13, 2009.

MESCH, CLARK & ROTHSCHILD, P.C.

- and -

MICHAEL W. CARMEL, LTD.

By  s/Frederick J. Petersen, #19944
   Lowell E. Rothschild
   Michael McGrath
   Scott H. Gan
   Brenda M. Whinery
   Frederick J. Petersen

   Michael W. Carmel
   Proposed Attorneys for the Debtor

Copy mailed July 13, 2009, to:

Office of the U.S. Trustee
230 N. First Ave., Suite 204
Phoenix, AZ 85003-1706

304446