MESCH, CLARK & ROTHSCHILD, P.C.
259 North Meyer Avenue
Tucson, Arizona 85701
Phone: (520) 624-8886
Fax: (520) 798-1037
Email: ecfbk@mcrazlaw.com
mmcgrath@mcrazlaw.com
fpetersen@mcrazlaw.com

AND

MICHAEL W. CARMEL, LTD.
80 E. Columbus
Phoenix, Arizona 85012-2334
Phone: (602) 264-4965
Fax: (602) 277-0144
Email: michael@mcarmellaw.com

Proposed Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 Proceedings |
| BASHAS' INC., Debtor | Case No. 2:09-bk-16050-JMM |
| BASHAS' LEASECO, INC., Debtor | Case No. 2:09-bk-16051-SSC |
| SPORTSMAN'S LLC, Debtor | Case No. 2:09-bk-16052-SSC |

**EMERGENCY MOTION AUTHORIZING PAYMENT OF PRE-PETITION WAGES, SALARIES, AND EMPLOYEE BENEFITS**

Bashas' Inc., Bashas' Leaseco Inc., and Sportsman's, LLC (collectively the "Debtors") move this Court for the entry of an order authorizing payment of pre-petition

///

///

wages and salaries, and the honoring of pre- and post-petition employee benefits. This Motion is supported by the following Memorandum of Points and Authorities.

DATED: July 13, 2009.   MESCH, CLARK & ROTHSCHILD, P.C.

- and -

MICHAEL W. CARMEL, LTD.


By  s/Frederick J. Petersen, #19944
    Lowell E. Rothschild
    Michael McGrath
    Scott H. Gan
    Brenda M. Whinery
    Frederick J. Petersen

    Michael W. Carmel
    Proposed Attorneys for the Debtor

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   FACTS**

1. The Debtors filed petitions for protection under Chapter 11 of the Bankruptcy Code on July 12, 2009.

2. Since the commencement of the Chapter 11 cases, the Debtors have continued to operate their businesses and manage their assets as Debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors request that this Court enter an Order pursuant to 11 U.S.C. § 105(a), authorizing them to pay or otherwise honor various employee-related pre-petition obligations of the Debtors to, or for the benefit of, currently active employees.

### The Debtors' Workforce

4.  The Debtors employ approximately 10,383 employees as of the Petition Date (the "Employees"). Approximately 6,337 of the Employees are full-time employees (the "Full-Time Employees"), approximately 3,798 are part-time employees (the "Part-Time Employees"), approximately 53 are temporary employees (the "Temporary Employees") and approximately 195 are Part-Time Occasional Employees ("the Part-Time Occasional Employees").

5.  The Employees perform a variety of critical functions, including the operation of the Debtors' businesses. The Employees' skills, knowledge, and understanding of the Debtors' businesses are among the Debtors' most valuable assets. If pre-petition compensation and benefit amounts are not received by the Employees in the ordinary course, they will suffer personal hardship and unnecessary distraction from their duties. Such a result obviously would destroy Employee morale and may result in unmanageable Employee turnover, causing immediate and pervasive damage to the Debtors' ongoing business operations. Any significant deterioration in morale at this time will substantially and adversely affect the Debtors and their ability to function, resulting in immediate and irreparable harm to the Debtors and their estates.

6.  The Debtors anticipate that accrued pre-petition obligations owing to individual Employees will be substantially less than the statutory cap of $10,950 for priority treatment that is set by Bankruptcy Code §§ 507(a)(4) and (a)(5) of the Bankruptcy Code. This Motion only seeks authorization to satisfy accrued pre-petition

obligations owing to individual Employees up to the statutory cap of $10,950.

7. The relief requested in this Motion will reduce significantly the administrative burden that might otherwise be imposed in these Cases. The compensation, benefit and reimbursement amounts that the Debtors seek to pay to the Employees constitute priority claims under Bankruptcy Code §§ 507(a)(4) and (5). Requiring the Debtors to identify to what extent each of their Employees hold priority or general unsecured claims for employee benefits, and to modify benefit policies to enforce these distinctions, would impose substantial additional burdens of administration and expense that would unduly hamper the Debtors' operations and are, therefore, unwarranted under the circumstances.

## II. **RELIEF REQUESTED**

8. To minimize the personal hardship that Employees will suffer if pre-petition employee-related obligations are not paid when due and to maintain morale of the Debtors' workforce during this critical time, the Debtors seek entry of an order authorizing the Debtors: (a) to pay and honor certain pre-petition claims that remain outstanding as of the Petition Date for, among other things, (i) wages, salaries and other compensation described below, (ii) federal and state withholding taxes and other amounts withheld or deducted (e.g., Employees' share of health insurance premiums), and (iii) reasonable and customary business expenses that are reimbursable by the Debtors under company policy; (collectively, the "Employee Obligations") and (b) to pay and honor certain pre-petition

claims that remain outstanding as of the Petition Date related to (i) employee health benefits, (ii) insurance benefits, and (iii) other employee benefits that the Debtors have historically paid in the ordinary course of business (collectively, the "Employee Benefits").

9. In addition, the Debtors seek an order authorizing and directing banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payments related to the foregoing Employee Obligations and Employee Benefits.

### A. EMPLOYEE OBLIGATIONS

10. The Debtors' Employee Obligations include wages, salaries, commissions, payroll deductions and withholdings, and reimbursable expenses. Before the Petition Date, the Debtors customarily either paid or withheld all of these Employee Obligations in the ordinary course of business. A description of the Debtors' Employee Obligations, and the estimated liabilities associated with each, is set forth below.

#### a) Employee Salaries and Bonuses

11. Each of the Employees receives an annual salary or hourly wage and, in some cases, periodic signing and/or performance bonuses. The Employees are paid weekly. The Debtor's last pay period prior to the Petition Date ended July 11, 2009. These wages and salaries are outstanding as of the Petition Date for the period then ended. In addition, the Debtor is current on substantially all pre-petition bonus payments under the Debtor's Bonus Programs. Accordingly, the Debtors are not seeking authorization in

this Motion to make any bonus payments to the Employees.

### b) Employee Salaries, Wages, and Commissions

12. All of the Debtors' Employees are paid weekly on the Wednesday, Thursday, or Friday subsequent to the end of the one-week period in which their salaries or hourly wages are earned.

13. The Debtor has historically paid its Employees, on average, approximately $21.9 million per month in gross salaries.

14. The last payroll period prior to the Petition Date ended on July 11, 2009. Accordingly, the Debtors estimate that, as of the Petition Date, accrued but unpaid salaries and hourly wages total approximately $5.3 million. Accordingly, the Debtors seek authorization to pay all Employees' wages and salaries owed by the Debtors' to Employees prior to the Petition Date.

### c) Payroll Taxes

15. The Debtors are required by law to withhold from each Employee's paycheck certain amounts related to federal, state and local income taxes, and social security and Medicare taxes (collectively, the "Withholding Taxes") for remittance to the appropriate taxing authorities. The Debtors must also match from their own funds social security and Medicare taxes so withheld, and pay (based on a percentage of gross payroll) additional amounts for state and federal unemployment insurance (the "Employer Payroll Taxes" and, together with the Withholding Taxes, the "Payroll Taxes").

16. The Debtor has historically withheld approximately $890,000 per pay period from its Employee's paychecks. The Debtor has historically paid approximately $405,000 per pay period in Employer Payroll Taxes on account of its Employees.

17. Payroll Taxes are funded through a direct withdrawal from the Debtors' operating account by the taxing authority on the day on which payroll is met during each pay period. As of the Petition Date, the amount of Payroll Taxes pertaining to the Employees' pre-petition salaries and hourly wages is approximately $1.3M. Accordingly, the Debtors seek authority to fund all such Payroll Taxes in the ordinary course of business.

### d) **Child Support Payments, Liens and other Garnishments**

18. The Debtors are required to remit approximately $55,000 per week for court ordered child support payments, liens and other garnishments to approximately 100 different vendors. These amounts are withheld from Employee's paychecks pursuant to court orders. Accordingly, the Debtors seek authority to continue to withhold such amounts form salaries, wages and commissions as set forth above, and remit such payments in the ordinary course of business.

### e) **Reimbursable Expenses**

19. The Debtors have a policy governing travel and business expense reimbursement for certain Salaried Employees that allows these employees to carry out their duties in an efficient and cost effective manner. The Debtors reimburse employees for reasonable out-of-pocket expenses incurred when those employees are engaged in

business on behalf of the Debtors, including meals, lodging, travel, and telephone usage. The Debtors estimate that the monthly costs associated with this reimbursement is approximately $103,000 per month. These expenses are paid through the Debtor's Accounts Payable system, and therefore, do not typically have any significant delay in processing reimbursement forms. As a result, the Debtors estimate that the total accrued unpaid reimbursable expenses as of the Petition Date is de minimis. If the Debtors are not permitted to satisfy such pre-petition obligations, the Employees who incurred those expenses may be personally liable. Accordingly, the Debtors seek authorization to reimburse its Employees for any reimbursable expenses that were incurred by Employees prior to the Petition Date.

### B. EMPLOYEE BENEFITS

20. As described below, the Debtors provide their Salaried Employees with various insurance options and programs including medical, dental, vision, short-term disability, and a 401 (k) plan (the "Employee Benefits"). The Debtors seek authority to satisfy all of their pre-petition obligations related to the Employee Benefits *e.g.* to pay any pre-petition insurance premiums that remain outstanding as of the Petition Date) and to remit all withholdings associated with such Employee Benefits.

### a) Health Care Plans

21. The Debtors provide their Employees with medical, dental, vision, and short term disability through a self-insured program (the "Health Insurance"). Therefore, the Debtors do not make premium payments for the Health Insurance, rather process claims

daily as they are presented in the range of approximately $3.1 million and $3.8 million per month. As these claims are processed daily, the Debtors believe they are current on all claims for the Health Insurance. Nevertheless, in an abundance of caution, the Debtors are seeking authorization to pay any such claims in the event the Debtors discover that any such pre-petition obligations have not been satisfied as of the Petition Date.

22. Employees pay a portion of the Health Insurance premiums through withholdings made during each pay period, which are paid to the Debtors weekly (the "Employee Health Insurance Contributions"). The Debtors estimate that they withhold approximately $100,000 per pay period from their Employees' paychecks. As of the Petition Date, the amount of Employee Health Insurance Contributions withheld but not remitted is approximately $100,000. Accordingly, the Debtors seek authority to remit all such contributions in the ordinary course of business.

    **b)**  **Basic Dependent Life, Basic Term Life, Basic Accidental Death and Dismemberment Insurance, and Long-Term Disability Insurance**

23. The Debtors also provide their Employees with Basic Term Life Insurance, Dependent Life Insurance, and Basic Accidental Death and Dismemberment Insurance through The Hartford (the "Life, Dependant Life and AD&D Insurance"). The benefits of the Life, Dependant Life and AD&D Insurance pays a life insurance benefit to the Employee's beneficiary equal to 1.5 times the Employee's annual base pay in the event of the Employee's death. The minimum benefit is $15,000. The Employee must participate in a medical plan to be eligible for this coverage. Coverage is also provided in the event

of the Employee's dependent's death if they are enrolled in the Health Insurance. The life insurance benefit is $1,000 per eligible dependent.

24. The Debtors make premium payments of approximately $53,000 per month for their Employees' Life, Dependant Life and AD&D Insurance. The Debtors believe they are current on all pre-petition premium payments for their Employees' Life, Dependant Life and AD&D Insurance as of the Petition Date. Nevertheless, in an abundance of caution, the Debtors are seeking authorization to make such payments in the event the Debtors discover that any such pre-petition obligations have not been satisfied as of the Petition Date.

25. The Debtors also provide their Employees with long-term disability insurance through Standard Insurance Company (the " Long-Term Disability Insurance"). The benefits of the Long-Term Disability Insurance begin after 180 days of disability with benefits up to 40% of the first $8,333 of the Employee's Pre-disability Earnings, reduced by Deductible Earnings, to a maximum of $3,333 per month before reduction by deductible income.

26. The Debtors make premium payments of approximately $35,000 per month for the Long-Term Disability Insurance. The Debtors believe they are current on all pre-petition premium payments for the Long-Term Disability Insurance as of the Petition Date. Nevertheless, in an abundance of caution, the Debtors are seeking authorization to make such payments in the event the Debtors discover that any such pre-petition obligations have not been satisfied as of the Petition Date.

### c) Supplemental Life, Universal Life, and Critical Illness/Cancer Insurance

27. In addition, the Debtors offer each eligible Employee the option of purchasing supplemental life insurance through The Hartford (the "Supplemental Life Insurance"). The Employee may elect any coverage amount from $20,000 to $500,000 in increments of $5,000. If the Employee purchases coverage, they may elect coverage for their spouse in an amount from $10,000 to $250,000, in increments of $5,000. Spouse coverage may not exceed the amount of coverage the Employee purchases for themselves. Dependent children are eligible for $5,000 or $10,000 in coverage. Employees pay the full cost of the Supplemental Life Insurance through withholdings made during each pay period. As of the Petition Date, the amount withheld but not remitted on account of the Supplemental Life Insurance is $8,000. Accordingly, the Debtors seek authorization to withhold and remit this amount in the ordinary course of business.

28. In addition, the Debtors offer each eligible Employee the option of purchasing universal life insurance through Trustmark Universal life insurance plan (the "Universal Life Insurance"). Employees pay the full cost of the Universal Life Insurance through withholdings made during each pay period. As of the Petition Date, the amount withheld but not remitted on account of the Universal Life Insurance is approximately $24,000. Accordingly, the Debtors seek authorization to withhold and remit this amount in the ordinary course of business.

29.  In addition, the Debtors offer each eligible Employee the option of purchasing critical illness/cancer insurance through Allstate Insurance (the "Critical Illness/Cancer Insurance").  The Employee may elect benefit amounts between $5,000 and $100,000.  Employees pay the full cost of the Critical Illness/Cancer Insurance through withholdings made during each pay period.  As of the Petition Date, the amount withheld but not remitted on account of the Critical Illness/Cancer Insurance is $6,200.  Accordingly, the Debtors seek authorization to withhold and remit this $6,200 amount in the ordinary course of business.

### d) 401(k) Plan

30.  The Debtors offer their Employees the opportunity to participate in the Debtors' 401(k) plan administered through Wells Fargo (the "401(k) Plan").  Employee contributions are voluntary and are processed through payroll deductions up to the maximum allowable IRS limit (the "Employee Contributions").  The Debtors estimate that they withhold approximately $108,000 per pay period from their Salaried Employees' paychecks on account of the Employee Contributions. The Employee Contributions are remitted to Wells Fargo within forty-eight hours of each weekly payroll.  The Debtors match up to four percent (5%) of the eligible Employee Contributions (the "Matching Contributions").  The Debtors Matching Contributions occur only once per year and have already occurred in March 2009, therefore, the Debtors believe that all pre-petition obligations have been satisfied as of the Petition Date.

31. As of the Petition Date, the amount of Employee Contributions withheld but not remitted is approximately $108,000. Accordingly, the Debtors seek authority to continue to remit such contributions in the ordinary course of business.

### e) <u>Workers' Compensation Insurance</u>

32. The Debtors maintain a workers' compensation insurance policy through self-insurance (the "Workers' Compensation Insurance"). The Debtors do not pay for the premiums on these policies rather, process claims as they are presented. The Debtors currently estimate an outstanding liability of approximately $4 million, and have historically paid approximately $237,000 per month in claims. The Debtors believe the outstanding claims amounts owed as of the Petition Date is approximately $120,000. Accordingly, the Debtors seek authority to continue to remit such claims payments in the ordinary course of business.

### f) <u>Anniversary Gifts</u>

33. The Debtors offer their Employees certain anniversary gifts based on years of service with the company in increments of five year milestones, beginning with an Employee's fifth anniversary and extending to retired employees through 40+ years (the "Anniversary Gifts"). Once an Employees or Retired Employees are eligible for these gifts, they select from a pre-determined selection of items that is paid for by the Debtors. As of the Petition Date, the value of Anniversary Gifts earned but not satisfied are estimated to be approximately $37,000. Accordingly, the Debtors seek authority to continue to honor these pre-petition gifts to maintain Employee morale.

### g) <u>**Vacation, Sick Time and Paid Time off**</u>

34. The Debtors offer their Employees certain benefits including vacation time, sick time and paid time off that the employees accrue based on time worked. The Debtors seek authority to continue to honor these employee benefits in the ordinary course of business.

## III. <u>LAW</u>

11 U.S.C. § 105 authorizes the Court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. This Court is a court of equity and has the inherent power to permit the relief requested by the Debtors. The Debtors are seeking authority to pay their employees and their employees' benefits in the ordinary course of business. It would be an unnecessary hardship, both on the employees and on the Debtors' ability to remain in business, if they were not authorized to pay their employees for wages and benefits earned pre-petition.

The Debtors employ numerous skilled employees, the retention of whom, are necessary for the continued and successful operations of the Debtors. Debtors believe payment of their employees' pre-petition earnings is necessary to retain such individuals to provide services post-petition.

Courts have authorized the payment of necessary pre-petition claims, where payment will enhance or maintain the value of the estate, under the "necessity of payment doctrine." *In re Chateaugay Corp.*, 80 B.R. 279, 286-88 (S.D.N.Y. 1987), *appeal dismissed*, 828 P.2d 59 (2d Cir. 1988); *In re CEI Roofing, Inc.*, 315 B.R. 50, 59

(Bkrtcy.N.D.Tex. 2004); *In re Just for Feet, Inc.*, 242 B.R. 821, 825-826 (D.Del. 1999). The Ninth Circuit has recognized the "necessity of payment doctrine." *In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987). In this case, it is necessary that the Debtors be authorized to pay their employees so they can maintain their skilled employees and successfully operate post-petition.

**WHEREFORE**, the Debtors respectfully requests the entry of an order granting the relief requested herein and such other and further relief as is just and proper.

DATED: July 13, 2009.   MESCH, CLARK & ROTHSCHILD, P.C.

- and -

MICHAEL W. CARMEL, LTD.

By s/Scott H. Gan , #6568
   Lowell E. Rothschild
   Michael McGrath
   Scott H. Gan
   Brenda M. Whinery
   Frederick J. Petersen

   Michael W. Carmel
   Proposed Attorneys for the Debtor

304288