James E. Cross, Bar No. 009063
Brenda K. Martin, Bar No. 013318
Jason J. Romero, Bar No. 023429
**Osborn Maledon, P.A.**
The Phoenix Plaza
2929 N. Central Ave., 21st Fl.
Phoenix, Arizona 85012
Telephone: 602-640-9000
Facsimile: 602-640-9050
jcross@omlaw.com
bmartin@omlaw.com
jromero@omlaw.com

*Counsel for Official Joint Committee of Unsecured Creditors*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>BASHAS' INC.,<br>BASHAS' LEASECO INC.,<br>SPORTSMAN'S, LLC,<br><br>Debtors. | Chapter 11<br><br>Case Nos.  2:09-bk-16050-JMM<br>  2:09-bk-16051-JMM<br>  2:09-bk-16052-JMM<br><br>(Jointly Administered) |
| This filing applies to:<br><br>☒   ALL DEBTORS<br><br>☐   SPECIFIED DEBTORS: | **THE OFFICIAL JOINT COMMITTEE OF UNSECURED CREDITORS' MOTION TO RECONSIDER/MOTION FOR RELIEF FROM SEPTEMBER 10, 2009 ORDER DENYING THE COMMITTEE'S APPLICATION TO EMPLOY FINANCIAL ADVISOR SIERRA CONSULTING GROUP, LLC.**<br><br>**(No Hearing Date Set)** |

Pursuant to Fed. R. Civ. P. 60(b), made applicable through Fed. R. Bankr. P. 9024, the Official Joint Committee of Unsecured Creditors (the "Committee"), through its duly appointed and undersigned counsel, respectfully moves for reconsideration of this Court's Order dated September 10, 2009, denying the Committee's Application for Entry of Order Authorizing the

Retention and Employment of Sierra Consulting Group, LLC ("Sierra") as Its Financial Advisors (the "Application") (Dkt No. 560). This Motion is supported by the following memorandum of points and authorities. It is also supported by the joinder being filed by the Debtors in support of this Motion.

**I.  BACKGROUND**

Bashas' Inc., Bashas' Leaseco Inc., and Sportsman's, LLC (collectively **"Debtors"** or "Bashas'") filed their respective petitions for relief under Chapter 11 of the Bankruptcy Code on July 12, 2009 ("Petition Date"). Each of the Debtors remains in possession of their assets and properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. On July 24, 2009, the US Trustee appointed the Official Joint Committee of Unsecured Creditors. Shortly thereafter, on July 27, 2009, the Committee retained the law firm of Osborn Maledon, P.A. to serve as its counsel. This Court entered an order approving the application on August 12, 2009 (Dkt No. 355).

Soon after its formation and concurrent with the interviews and selection of its counsel, the Committee also interviewed potential candidates to serve in the role of financial advisor ("FA"). It was the Committee's intent to retain such professionals to assist the Committee in discharging its duties and fully complying with its functions under the Bankruptcy Code and Rules. The Committee originally sought to employ Mesirow Financial ("Mesirow") and filed an application to employ Mesirow (Dkt No. 292). On September 1, 2009, given the fact that the Mesirow application was not set for hearing until several weeks after the Committee's filing of the application to employ Mesirow, and in addition to other concerns, Mesirow asked the Committee to withdraw its application to employ Mesirow as the Committee's FA (Dkt No. 496).

Two days after Mesirow chose to withdraw from consideration as an FA candidate, the Committee selected an FA that it had previously interviewed, Sierra. On September 4, 2009, the

Committee filed its Application to employ Sierra, along with a request for an accelerated hearing on such Application. The Court granted the request for an accelerated hearing and the Sierra Application was set for hearing on September 9, 2009, at 10:30 a.m., along with several other pending matters in these cases. Based upon the reasons set forth at the hearing, the Court entered its Order denying the Sierra Application on September 10, 2009 (Dkt No. 560). The Committee seeks relief from this Order. The Committee believes that after the Court considers this matter further, and based upon the arguments raised herein, along with the Debtors' joinder to this Motion filed concurrently with this Motion, the Court shall determine that there is now ample and sufficient evidence to constitute cause to reconsider and vacate the Court's September 10th order denying the Committee's Application to employ Sierra as the Committee's FA.

**II.    ARGUMENT**

    **A.    The Committee Should Be Afforded the Right to Employ a Financial Advisor in Chapter 11 Cases of the Financial Magnitude and Complexity Of These Cases.**

The Committee is empowered to "select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee." 11 U.S.C. § 1103(a). It is black letter law that "[t]here is a strong public policy in bankruptcy in favor of permitting parties to retain professionals of their choice." 2 King et al., Collier on Bankruptcy ¶ 1103.03[2][a][iii] at 1103-10 (15th ed. 1999); see also In re Caldor, Inc.-NY, 193 B.R. 165, 170 (Bankr. S.D.N.Y. 1996) ("Public policy favors permitting parties to retain professionals of their choice."). Moreover, bankruptcy courts have historically shown great deference to a debtor-in-possession's or trustee's selection of professionals, provided such professionals are disinterested and competent:

> Trustees may select their own attorneys, accountants and other professional persons without interference from creditors. The selection is, however, subject to the approval of the court within its sound discretion.

2753406

Collier ¶ 327.04[1] (quoting In re Mandell, 69 F.2d 830, 831 (2d Cir. 1934)). It is clear that in a Chapter 11 case, the creditors' committee serves the same "watchdog" role as a trustee would in spite of the broad powers granted to Chapter 11 debtors while serving as debtors-in-possession.

The Court was unequivocal during the September 9 hearing that its rejection of the Committee's Application to employ an FA was a result of the Court's understandable desire to reign in administrative expenses in these cases.

While such position is laudable and absolutely reasonable in a majority of Chapter 11 cases, there is precedent that it should not be the sole basis for a court's denial of the appointment of a committee's professional under Section 1103. In re Standard Steel Sections, Inc., 200 B.R. 511, 513 n.2 (S.D.N.Y. 1996) ("[T]he Court may not deny appointment simply because of its belief that such appointment may prove to be a drain on the assets of the estate.") In Standard Steel, the bankruptcy court denied the appointment of committee's counsel of choice, despite holding that the committee had demonstrated a need for such representation. The court's denial stemmed primarily from the court's concern that appointment of counsel for the committee might constitute a substantial drain on the assets of the estate. The district court overturned the bankruptcy court's order, holding that

> While the able and conscientious Bankruptcy Court is to be lauded for its concern with preserving the assets of the estate, on the approach this Court adopts that concern did not legally justify rejection of appointment of counsel under § 1103(a). Rather, the appropriate time to address such concern is when the actual request for reimbursement of such fees is before the Court, for it is at that time that the Bankruptcy Court is expressly required to determine whether the legal services that were provided to the committee of unsecured creditors were reasonably necessary in terms of benefit to the overall estate and its orderly disposition. Consideration prior to that time is both inappropriate and premature.

Id. at 514.[1]

---

[1] While the Application in question dealt with the employment of counsel, in these cases, the same legal analogy applies to any estate professional, such as Sierra in this instance.

2753406

The Committee recognizes that § 1103 provides the Court the discretion to review and approve the appointment of any professional selected by the Committee, including its choice of a professional such as Sierra. While the Court does not serve as a "rubber stamp" for such applications, its discretion in denying such an application must be founded upon the evidence before it.

Here, the only "evidence" before the Court (since there has been no evidentiary hearing) makes it plain that the Committee needs the assistance of a FA. According to the pleadings on file with the Court, Bashas' operates more than 150 stores and employed more than 10,000 employees as of the filing date. <u>Declaration of Michael Proulx in Support of Chapter 11 Petitions and First Day Motions</u> (Dkt No. 5). The Debtors report annual gross revenue of more than $2 billion for 2007 and 2008. <u>Statement of Financial Affairs</u> (Dkt No. 324). The Debtors have scheduled $386 million in assets and $271 million in liabilities. (Dkt No. 323). Thus, these cases present unique challenges necessitating experienced financial professionals with substantial expertise in large and complex bankruptcy proceedings. Such issues include rejection of leases and individual store closings valuation of stores and assets (including non-essential assets), liquidation analysis, and the structuring of a plan of reorganization given the current challenges presented by the local and national economies. This Court is forcing the Committee to analyze and respond to them without the benefit of a professional recognized to possess the skill to provide such analyses.

The lease rejection issues to date are a primary example.[2] In other instances, the Debtors have received the assistance of experienced financial advisors, but the Committee has been

---

[2] As the Court noted at the September 9th hearing, the Committee has appealed the two orders approving the Debtors' decision to surrender equipment to landlords in exchange for a release by the landlords of any lease rejection damage claim. As Committee's counsel stated on the record at the time the Committee's objection was overruled, the Committee requires the assistance of a FA to provide it with an opinion as to whether the Debtors' claims were substantiated. Absent such evidence, the Committee had to protect its constituency by seeking appellate review of
(continued...)

unable to provide meaningful review and respond to the financial analysis without the assistance of its own financial professional.

The case law establishes, beyond argument, that in large restructurings such as these cases it is incumbent upon the court to ensure that debtors and committees receive the professional representation that the Code requires of them given the fiduciary role in which they serve. See In re Southwest Food Distributors, LLC, 561 F.3d 1106 (10th Cir. 2009).[3] The Debtors and the Bank Group have the benefit of such professional advice and may take comfort in the fact they have retained such professionals to serve their interests.

Nevertheless, the Committee, which has a fiduciary obligation to represent the interests of ALL unsecured creditors in these cases, shall be forced to understand, analyze, and take action upon these complicated issues without the same professional guidance afforded to the other parties with the equivalent economic stake in the outcome of these cases.

**B.      The Court's Belief/Finding that the Committee Does Not Need a Financial Advisor Because these Cases Shall Provide a One Hundred Percent Dividend to the Allowed Claims of Unsecured Creditors Is Not Supported by the Record.**

The Court's denial of the Committee's Application to employ Sierra appears to have been primarily based upon the Debtors' counsel's claims that these cases shall result in a 100% distribution to the allowed claims of creditors.

---

(continued...)

such orders, especially when the Debtors failed to provide so little advance notice to the Committee of such settlements. Only an FA possesses the unique skills and knowledge to provide the Committee the professional guidance to determine whether the Debtors' business judgment is supported by verifiable financial data and is a proper exercise of their business judgment.

[3] While the Southwest Food Distributors case dealt with the employment of counsel, not a financial advisor, the analysis remains identical. It is also worth pointing out that the Southwest Food Distributors case involved a debtor with less than $1,000,000 in assets, not a business the size of the Debtors.

First, the Court is well aware that statements of counsel are not to be considered as evidence. See, e.g., Mann v. GTCR Golder Rauner, LLC, 483 F.Supp.2d 864 (D. Ariz. 2007); In re Lewis, 2007 WL 4591960 (Bankr. D. Mont. 2007). Second, this is not a representation that was made under the Code mandates of a disclosure statement in support of a plan. Third, and perhaps most importantly, it is a statement made at least several weeks prior to the deadline for filing proofs of claims in these cases. While the Committee certainly hopes that the Debtors' promise of a 100% recovery for unsecured creditors holds true, its members are bound to a legally imposed duty to investigate whether that will, in fact, be the case.

Seeking the assistance of a professional FA in these circumstances is consistent with the fiduciary obligations placed upon the Committee to represent its constituents. Indeed, the Committee members feel duty bound to ask the Court to reconsider its decision to deny Sierra's Application.

In other words, like the Standard Steel decision cited above, the record supports the Committee's Application to employ a FA. Given the size of these cases, the complicated and special issues involved, and the relative financial strength of these Debtors, the Committee believes that it has met its burden of demonstrating the necessity and benefit of the appointment of retaining Sierra as its FA.

**C.  The Debtors Have Joined the Committee's Request for Reconsideration of the Committee's Application, and No Other Party Has Objected.**

In light of Debtors' counsel's representations that Debtors intend to confirm a 100% payment plan, this Court also expressed a concern for protecting the Debtors' equity holders from the expense of an additional professional. However, no objections were filed to the Committee's Application to employ Sierra. Moreover, following this Court's denial of that Application, the Committee and the Debtors engaged in honest and open discussions, which has led the Debtors to

understand the Committee's need for an FA and to fully support the employment of Sierra. As a result, the Debtors have filed, or are concurrently herewith filing, a joinder in support of the Committee's Motion for Reconsideration. Much like the Debtors' application to employ the Deloitte Touche firm as its FA, not a single party in these cases filed an objection to the Committee's Application to employ Sierra. Thus, the Debtors and the other creditor constituencies in these cases do not oppose the expense the Debtors' estates would bear in connection with the services of the Committee's FA. Debtors are fully aware and agree that in the event that the Debtors confirm a 100% payment plan, the costs of the Committee's FA shall be borne by Debtors' equity holders, but it is the consensus judgment of all of the experienced professionals in these cases that the Committee requires the services of an FA to fulfill its statutory duties and all of the affected client groups, comprised of very experienced and knowledgeable businesspersons, agree.

At a minimum, since there were no objections to the Sierra Application before it was denied *sua sponte*, and since the Debtors have joined the Committee's Motion for Reconsideration, the Committee asks that the Court at least allow the Committee to present evidence in support of the Sierra Application.[4] Given the concerns the Court raised and previously expressed on the record regarding administrative expenses when discussing the Committee's aborted attempt to employ Mesirow, the Committee believed that the Sierra application resolved those concerns since the Committee's decision to employ Sierra involved the employment of a Phoenix based FA whose professionals billed at hourly rates far less than those

---

[4] Should the Court grant such a hearing, the Committee would submit declarations from three Committee members who have volunteered additional time above and beyond their duties as members to serve on a Financial Subcommittee. This Subcommittee was formed to help the Committee gain at least a general understanding of the Debtors' financial condition given the delays in obtaining the employment of an FA for the Committee. Each of these members will testify regarding the Committee's specific need for the assistance of an FA in these cases.

listed by the Mesirow professionals. Sierra's highest hourly rate is less than the lowest hourly rate of the Deloitte professionals employed as the Debtors' FA.

### D. The Committee Has An Obligation to Employ an FA in These Cases.

As pointed out above, the members of the Committee are burdened with the fiduciary obligation as Committee members to discharge their duties in a manner consistent with the applicable law and industry standards in bankruptcy cases of this size. The Committee is concerned that given the size of these cases and the complex and difficult financial decisions these cases engender, it could be argued that it constitutes a breach of the Committee members' duty to their constituency to fail to employ an experienced FA. While there may be some protection afforded by the fact the Court denied the Application, a reasonable business person working for companies such as those represented by the Committee members would take little solace in such fact. The Committee members are all concerned that their efforts to satisfy their obligations as members might be seriously impaired without the assistance of a FA.

While the Court may believe that the creation of a Financial Subcommittee is the answer to the Committee's concerns, such a solution does not account for the fact that each Committee member already has a full time job in addition to their duties on the Committee. The Committee has already suffered from the resignation of one member as a direct result of the time commitment these cases require. To ask these business men and women to devote further time to perform services on a voluntary basis which require the time and skill of a professional FA, is not only unfair, but impossible.

The Committee finds itself in a very difficult position. The Committee wishes to cooperate and work with the Debtors to achieve a successful reorganization. Several Committee members, such as Cold Mountain Mechanical, Hickman's Egg Farms, Kalil Bottling, and Shamrock Farms are Arizona-based businesses that have had long term and profitable

relationships with Bashas' over many decades. Other Committee members represent large national and multinational corporations such as Cardinal Health, Coca Cola, and Kraft Foods. The last thing any of these parties wishes to do is to create administrative expenses which would torpedo the Debtors' efforts to emerge from Chapter 11. They all have an inherent financial motive in having customers such as these Debtors continue in business and ordering their products.

Nevertheless, as experienced businesspersons, the Committee members know well when they must employ professionals to assist them in carrying out their duties. By its decision to deny the Committee the right to employ Sierra in these cases, which occurred absent an objection by any other creditor or party in interest,[5] the Court imposed its judgment over that of corporate executives with years of experience in the Debtors' industry.

One factor the Court may have failed to consider is how its decision usurps the judgment of such professionals, and discourages their future participation in the Chapter 11 process, when such experience and judgment is so sorely needed in cases such as these which are so vital to the very legacy and future of Arizona business and the Arizona economy. All of the Committee members are contributing their time (at no expense to the Debtors) in order to assist the Debtors' efforts toward reorganization in these bankruptcy cases, and their request for professional assistance arises from the seriousness with which they take their fiduciary obligations to the general unsecured creditor body.

Finally, in keeping with its fiduciary obligations to unsecured creditors and the desire it shares with this Court to contain the administrative expenses in this case, the Committee has

---

[5] The Committee acknowledges that both the Debtors' counsel and the Office of the U.S. Trustee contacted them to raise informal objections, which the Committee's counsel, Mr. Cross, stated on the record at the September 9th hearing would be resolved through the language contained in a form of order approved by both of these parties. The order which the Court denied does not contain such provisions/concessions. If the Court decides to grant this motion, a new form of order shall need to be drafted and approved by these parties before it shall be lodged.

2753406

established a subcommittee to review the application of professionals it employs. No fee applications shall be filed without first being subjected to such review. If the Court should decide to grant this Motion, Sierra's applications for compensation shall be subject to this process as well.

### III. CONCLUSION

The Court denied the Committee's Application to employ Sierra based primarily on its reliance upon the Debtor's representations that all unsecured creditors in these cases shall be paid in full. There is no dispute that there is no documentary or testimonial evidence in the record before the Court to provide an evidentiary basis for such a finding. In fact, the deadline for filing claims in these cases is still weeks away. <u>Order Establishing Bar Date to File Claims</u> (Dkt No. 458).

Second, even if such claim turns out to be true, the party that shall ultimately bear the expense for the Committee's professionals are the Debtors, who did not object to the Committee's Application to employ Sierra, and are, in fact, filing a joinder asking the Court to grant the Committee's Motion for Reconsideration.

Third, no other party in these cases filed an objection to the Committee's Application to employ Sierra. The Committee has agreed to resolve any informal objections raised, and no other party appeared at the September 9th hearing to argue against the Committee's Application.

Fourth, the Committee believed that based upon the Court's comments at prior hearings in these cases, its selection of Sierra would address the Court's stated concerns. If the Court continues to believe it should deny the Committee's attempts to employ Sierra, the Committee requests the opportunity to present evidence in support of the Sierra Application.

The Bankruptcy Code provides that a creditors' committee is entitled to a seat at the table in a bankruptcy reorganization. If such a role is to be as effective as Congress intended, the

2753406

Committee needs the tools necessary to be an effective participant in the reorganization process. The proper professional advice, especially in a case where there is not a single party objecting to such a request, is vital to the Committee fulfilling the role Congress mandated.

The Committee respectfully requests that the Court reconsider its denial of its Application to employ Sierra, and allow such employment upon the terms and conditions agreed upon among the relevant parties in these cases. Such terms shall be fully disclosed and subject to an agreed upon form of order should the Court grant this Motion.

RESPECTFULLY SUBMITTED this 17th day of September, 2009.

**OSBORN MALEDON, P.A.**

By: /s/ James E. Cross
    James E. Cross, Esq.
    Brenda K. Martin, Esq.
    Jason J. Romero, Esq.
    The Phoenix Plaza
    2929 N. Central Ave., 21st Fl.
    Phoenix, Arizona 85012
    *Counsel for the Official Joint Committee of Unsecured Creditors*

2753406