MESCH, CLARK & ROTHSCHILD, P.C.
259 North Meyer Avenue
Tucson, Arizona 85701
Phone: (520) 624-8886
Fax: (520) 798-1037
Email: ecfbk@mcrazlaw.com
        mmcgrath@mcrazlaw.com
        fpetersen@mcrazlaw.com

AND

MICHAEL W. CARMEL, LTD.
80 E. Columbus Avenue
Phoenix, Arizona 85012-2334
Phone: (602) 264-4965
Fax: (602) 277-0144
Email: michael@mcarmellaw.com

Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 Proceedings |
| BASHAS' INC.,<br>BASHAS' LEASECO INC.,<br>SPORTSMAN'S, LLC,<br><br>Debtors. | Case No. 2:09-bk-16050-JMM<br>2:09-bk-16051-JMM<br>2:09-bk-16052-JMM<br>(Joint Administration) |

This Filing Applies to:

☒ All Debtors
☐ Specified Debtors

# FIRST AMENDED PLAN OF REORGANIZATION JOINTLY PROPOSED BY DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

# TABLE OF CONTENTS

I.      DEFINITIONS AND RULES OF INTERPRETATION.................................................5

II.     SUMMARY AND EXECUTION OF THE PLAN.................................................................5

III.    PLAN FUNDING IMPLEMENTATION AND SUBSTANTIVE
        CONSOLIDATION OF SPORTSMAN'S .........................................................................7

IV.     CLASSIFICATION *AND TREATMENT* OF CLAIMS AND INTERESTS................9

        A.    Class 1 – Administrative Claims ........................................................................9

              1.    U.S. Trustee Fees.  Quarterly fees required under applicable law.................10

              2.    Estate Professionals.........................................................................................10

              3.    Creditors entitled to §503(b)(1)(A)(ii) priority ..............................................10

              4.    Creditors entitled to §503(b)(9) administrative priority ..............................11

              5.    Post Petition Expenses ..................................................................................11

              6.    Stub Rent .........................................................................................................11

        B.    Class 2 – Secured Claim of Grace Funding Group, LLC.................................11

        C.    Class 3 – The Bank Group Claims ...................................................................12

        D.    Class 4 – The Note Holders' Claims ...............................................................14

        E.    Class 5 – Bashas' Secured Tax Claims ...........................................................17

        F.    Class 6 – Bashas' Priority Tax Claims ............................................................17

        G.    Class 7 – Leaseco's Priority Tax Claims.........................................................17

        H.    Class 8 – Bashas' Priority Wage and Benefit Claims. .....................................18

        I.     Class 9 – Bunzl Distribution Southwest LP Claim ..........................................18

        J.     Class 10—Bashas' Secured Vendor Claims.....................................................20

        K.    Class 11 – Bashas' Unsecured Vendor Claims .................................................21

        L.    Class 12 – Bashas' Non-Vendor Unsecured Claims .........................................23

        M.    Class 13 – Bashas' Unsecured Convenience Claims. ......................................24

        N.    Class 14 – Leaseco's Unsecured Claims. ........................................................24

        O.    Class 15 – Leaseco's Unsecured Convenience Claims. ..................................25

        P.    Class 16 – Parra Class Action Creditors...........................................................25

Q. Class 17 – SERP and SEWBP Plan Beneficiaries.............................................. 26

R. Class 18 – Rabbi Trust Beneficiaries ................................................... 27

S. Class 19 – Equity Interests. .................................................................. 27

V. CRAM-DOWN OF NON-ACCEPTING CLASSES...................................... 28

VI. REJECTION/ASSUMPTION OF LEASES AND EXECUTORY CONTRACTS . 28

VII. EFFECT OF CONFIRMATION ......................................................... 30

VIII. REVESTING.................................................................................. 30

IX. RETENTION OF JURISDICTION ..................................................... 30

X. MODIFICATION OF PLAN................................................................. 32

XI. RECOMMENDATION ....................................................................... 33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The Debtors propose this Joint Chapter 11 Plan of Reorganization (the "Joint Plan" and/or the "Plan"), pursuant to section 1121(c) of the United States Bankruptcy Code for the reorganization of the following entities:

• Bashas' Inc., an Arizona corporation ("Bashas'"), the Debtor in possession in Chapter 11 case number 2:09-bk-16050-JMM,

• Bashas' Leaseco, Inc., an Arizona corporation ("Leaseco"), the Debtor in possession in Chapter 11 case number 2:09-bk-16051-JMM, and

• Sportsman's, LLC, an Arizona limited liability company ("Sportsman's"), the Debtor in possession in Chapter 11 case number 2:09-bk-16052-JMM.

The Official Joint Committee of Unsecured Creditors (the "Committee"), is co-sponsoring this Plan for the reorganization of Bashas', Leaseco, and Sportsman's because it believes that the Plan represents the most practical and effective means for repaying the claims of creditors, reorganizing the Debtors' businesses, and maintaining relationships between Bashas' and its trade partners. In co-sponsoring the Plan, the Committee has relied upon information in the *Debtors' First Amended Disclosure Statement in Support of Plan of Reorganization Jointly Proposed by Debtors and the Official Joint Committee of Unsecured Creditors* (the "Disclosure Statement"). The Committee has further relied upon the work and financial analysis of Keegan, Linscott & Kenon, the Debtors' financial advisor, in that the Committee has not enjoyed the assistance of a court-appointed financial advisor. Based upon the Debtors' information and the Committee's collective experience and judgment, it endorses this Plan and recommends that creditors vote in favor of it.

## I. <u>DEFINITIONS AND RULES OF INTERPRETATION</u>

For the purposes of this Plan, terms (which appear herein as capitalized terms) shall have the meanings set forth in the attached Exhibit A. Such meanings are equally applicable to the singular and the plural forms of the defined terms, unless the context otherwise requires. Unless otherwise provided in this Plan, all terms used herein have the meaning assigned to them under title 11 of the United States Code (as amended from time to time, the "Bankruptcy Code") or the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"). The rules of construction applicable to the Bankruptcy Code and the Bankruptcy Rules are applicable to this Plan.

## II. <u>SUMMARY AND EXECUTION OF THE PLAN</u>

The goal of this Plan is to continue the ownership and operation of a long-standing Arizona business by the Basha family, which currently employs approximately 8500 "members" as of the date of the filing of the Disclosure Statement. The continuing business will allow the Debtor to repay creditors in full and continue conducting business with long-term trade vendors.

All claims and interests are placed into classes as set forth below. A claim or interest is placed in a particular class, only to the extent that the claim or interest falls within the description of that class. Such claim may also be classified in additional classes, to the extent that any portion of the claim falls within the description of such other class.

A claim or interest is placed in a particular class for all purposes, including voting on this Plan, confirmation and receiving distributions pursuant to this Plan. A claim or interest participates only to the extent that such claim or interest is an Allowed Claim in that class, and such claim has not been paid, released or otherwise settled prior to the Effective Date.

Through the Plan, the Debtors intend to modify the payment terms of secured and unsecured creditors to allow for payment of all allowed prepetition claims in full with interest over an extended term.

The Bank Group and the Note Holders (collectively the "Lender Group") claim a prepetition security interest in the Debtors' personal property, including but not limited to cash, inventory, equipment, and accounts receivable. The Lender Group asserts that they are oversecured creditors as a result of such security interest, entitled to payment of post-petition interest and attorney's fees. The Debtors' grant of these security interests occurred within the 90 days preceding the filing of the Debtors' bankruptcy cases and while the Debtors believe they were unable to pay outstanding obligations in the normal course of business and while they were insolvent. Through the Plan, the Debtors will treat the Lender Group as fully secured, but reserve all rights to pursue the appeal on the avoidance action related to the grant of the security interest, and to contest the applicable interest rate as well as the allowance of the costs and attorney's fees incurred by the Lender Group.

The Plan provides that the Lender Group will be paid the allowed amount of their claims, including attorney's fees as agreed by the Parties or determined by the Court, in full, with interest at a market rate, accruing post-confirmation on these amounts over a period of years. The Debtors assert the appropriate interest rate to be paid post confirmation is the non-default, contract rate pursuant to the terms of the parties' agreements prior to January 1, 2009, or such other rate determined appropriate by the Court.

Priority creditors and landlords with unsecured claims arising from rejected leases will be paid the allowed amount of their claims, in full, over time with interest accruing post confirmation. Unless otherwise agreed, any unpaid administrative rent owed to any landlord will be paid on the Effective Date. Unsecured creditors who regularly supply the Debtors with goods and services will be paid the allowed amount of their claims in full over time with interest accruing post confirmation.

## III. PLAN FUNDING IMPLEMENTATION AND SUBSTANTIVE CONSOLIDATION OF SPORTSMAN'S

The Plan will be funded from Debtors' ongoing business operations. Such funds will allow the periodic payments to be made by this Plan. Post-petition financing has been available from Grace Funding, LLC pursuant to authority granted by the Bankruptcy Court, though the Debtors have not been required to borrow during the reorganization proceeding. The Debtors have negotiated with Grace Funding and asset-based lenders for funding postconfirmation. The Plan will also be funded from the net proceeds of the sale of Debtors' Liquidation Property as set forth in Exhibit 3 attached to the Disclosure

Statement. The Allowed Claims in Classes 10, 11, 12, 14, and 16, comprised of various secured creditors, will be paid – in part – from future Net Cash Flow of the Debtors, until the claims have been paid in full.

This Plan will serve to substantively consolidate Sportsman's and Bashas' estates and bankruptcy cases. The Conformation Order will contain findings supporting, and conclusions providing for, substantive consolidation of these two estates.

As a result of the consolidation of the assets and liabilities of these two estates: (a) the bankruptcy cases shall be consolidated into a single case; (b) all property of these two estates shall be deemed to be the property of the Consolidated Bashas' Estate; (c) all Allowed Claims against either estate shall be deemed to be Allowed Claims against the Consolidated Bashas' Estate, any proof of claim filed against either estate shall be deemed to be a single claim filed against the Consolidated Bashas' Estate, and all duplicate proofs of claims shall be expunged; (d) all intercompany claims by and against either Sportsman's or Bashas' shall be eliminated, and no distributions under this Plan shall be made on the account of such intercompany claims; (e) except as specifically provided herein, all guarantees by Sportsman's of claims against Bashas' shall be extinguished and eliminated, and no distributions under this Plan shall be made on account of claims based on such guarantees; (f) for purposes of determining the availability of the right of setoff under §553 of the Bankruptcy Code, Sportsman's and Bashas' shall be treated as one consolidated entity so that, subject to the other provisions of §553 of the Bankruptcy Code, debts due to one and claims against one may be set off against the debts and claims

against the other, *provided however,* the consolidation shall not affect or expand in any manner the liability of non-Debtors or any Claim.

Substantive consolidation shall have no effect upon valid, enforceable and unavoidable liens, and shall not expand or contract those liens in any ways. Substantive consolidation shall not have the effect of creating a Claim in a class different from the class in which the Claim would have been placed under this Plan in the absence of substantive consolidation. The substantive consolidation contemplated herein shall not affect any applicable date(s) for purposes of pursuing any bankruptcy causes of action.

On the Effective Date of the Plan, the Court will appoint an ombudsman to serve as the liaison between the Reorganized Debtors and those members of Classes 11, 12, 13, 14, 15 and 16 unsecured creditors. It will be the ombudsman's responsibility to report to this creditor body about the Reorganized Debtors' financial performance and whether Bashas' will meets its post-Effective Date payment obligations to these classes. It is anticipated that the ombudsmen will interface with the Bashas' Financing and Accounting Department on a quarterly basis each year, and will provide written reports not less than twice each year to its constituents.

## IV.    CLASSIFICATION *AND TREATMENT* OF CLAIMS AND INTERESTS

### A.    Class 1 – Administrative Claims

Administrative Claims are those that have been incurred since the initiation of these bankruptcy cases or expenses entitled to administrative priority pursuant to §§507(a)(2) or 503(b) of the Bankruptcy Code. Administrative Claims are funded from

operations or from the Debtor-in-Possession financing approved by the Bankruptcy Court.

Class 1 Claims are as follows:

*1.* **U.S. Trustee Fees**. Quarterly fees required under applicable law.

*Any amounts owing will be paid on the Effective Date, or as due in the normal course of billing and payment. The Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). The reorganized Debtors shall file with the Court, and serve on the United States Trustee, a quarterly financial report for each quarter (or portion thereof) that the cases remain open in a format prescribed by the United States Trustee and provided to the Debtors by the United States Trustee, and shall pay such quarterly fees as become due for each quarter post-confirmation that the cases remain open.*

*2.* **Estate Professionals**. Allowed Claims of Estate Professionals including but not limited to Mesch, Clark & Rothschild, P.C.; Sunbelt Capital, LLC; Burch & Cracchiolo, P.A.; the Debtors' Financial Advisor; Michael W. Carmel, Ltd; Stinson Morrison Hecker, LLP; Steptoe & Johnson, LLP; and Estate Professionals employed by or on behalf of the Official Committee of Unsecured Creditors, including but not limited to Osborn Maledon.

*All approved and unpaid fees and costs will be paid in full on the later of Allowance of such Claims, or the Effective Date.*

*3.* **Creditors entitled to §503(b)(1)(A)(ii) priority.** The Bankruptcy code provides wages or benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board ("NLRB") as back pay attributable to any period of time occurring after commencement of the case, as a result of Bashas' violation of Federal or State law, are entitled to administrative priority. There are approximately 30 employees who may have claims in this class pursuant to an award of

the NLRB issued on or about September 24, 2009. The amount of these claims, if any, has not yet been determined and is unknown.

*All allowed claims entitled to administrative priority pursuant to this section of the Bankruptcy Code will be paid in full on the later of the Effective Date or the allowance of the claim.*

**4.     Creditors entitled to §503(b)(9) administrative priority**. The Allowed Claims of creditors who delivered goods received by the debtor within twenty (20) days before the filing date in which the goods were sold to the debtor in the ordinary course of the debtor's business and are otherwise legally entitled to such status.

*All allowed claims entitled to administrative priority pursuant to this section of the Bankruptcy Code will be paid in full on the later of the Effective Date or the allowance of the claim.*

**5.     Post Petition Expenses.** These expenses will be paid as they are incurred in the ordinary course of business.

*Any outstanding amounts will be paid in full on the later of the Effective Date, or in the ordinary course of the Debtors' business.*

**6.     Stub Rent**. The Allowed Claims owed to landlords for the period from July 12 through July 31, 2009.

*All Allowed Claims, unless otherwise compromised or agreed by the parties, will be paid in full on the later of Allowance of such Claims or the Effective Date.*

**Class 1 claims are not impaired and may not vote.**

**B.     <u>Class 2 – Secured Claim of Grace Funding Group, LLC.</u>** This class consists of the secured claim of Grace Funding Group, LLC, which is secured by first priority lien on all of the real property owned by Bashas'.

> *The holder of this Allowed Claim will be paid all accrued and unpaid interest at the rate of 8%, and reasonable fees and costs on the Effective Date. The outstanding principal and any post-confirmation interest at a rate between 8% and 12% per annum, will be paid within twelve (12) months after the Effective Date. The maturity date of this prepetition credit facility will be extended to the first anniversary of the Effective Date. Grace will retain its prepetition lien, unless otherwise agreed by the parties.*

**The Class 2 claim is impaired and may vote.**

C.    <u>**Class 3 – The Bank Group Claims.**</u> This class consists of the allowed claim of the Bank Group in the prepetition principal sum of one hundred ten million four hundred and fifty-eight thousand nine hundred fifty dollars ($110,458,950). This amount is broken up between the three banks as follows: Wells Fargo Bank $46,237,200; Bank of America $44,214,250; and, Compass Bank $20,007,500.

*1.* **Treatment of Bank Group Claims if the Bank Group Votes in Favor of Confirmation of the Plan and Stipulates to Release of Its Security Interests.**

> *a)    The prepetition Claims of the Bank Group will be allowed in the above-referenced amounts (the "Allowed Claim"). The Allowed Claim will include post petition interest through the Effective Date at the contract rate in effect prior to January 1, 2009, or at a rate as agreed to by the Parties. The Allowed Claim will also include attorney's fees and costs in an amount agreed to by the Parties, or as allowed by the Bankruptcy Court. The Bank Group agrees to provide detail of its request for attorney's fees and costs prior to the confirmation hearing. If the amounts set forth in the detail are not agreed to by the Debtors, such amounts will be determined by the Court. Any amounts in addition to the Allowed Claim shall be allowed only pursuant to order of the Bankruptcy Court.*

> *b)    Commencing on the Effective Date, interest will accrue on such Allowed Claim post-confirmation at the non-default contract rate in effect prior to January 1, 2009, or at such market rate as the parties agree.*

> *c)    On the Effective Date, the Bank Group will be paid in cash their proportionate share with the Allowed Claim of the Note Holders, from the funds sequestered after the filing date related to the Debtors' use of cash collateral including any monthly adequate protection payments, and the net proceeds from collateral sales which*

shall be applied to pay accrued and unpaid interest, reasonable attorney's fees and costs as allowed by the Court or agreed to by the Parties, and any remaining amounts shall be applied to reduce the principal amount of the Allowed Claim.

d) The Allowed Claim of the Bank Group will be paid monthly. During the first 12 months after the Effective Date, the Debtors will make monthly interest-only payments. Beginning in the 13th month after the Effective Date, the Debtors will make monthly principal and interest payments based on a twenty (20) year amortization that will continue for the remaining forty-eight (48) months.

e) Any remaining balance due the Bank Group will be paid in full in the fifth (5th) anniversary of the Effective Date of the Plan.

f) The Debtors will create a trust, and will be both the trustor and trustee of this trust. The trust will be funded from the net proceeds from the sale of Bashas' Liquidation Property identified on the attached Exhibit 3 (the "Trust Assets"). The Bank Group will receive a pro rata beneficial interest with the Allowed Claim of the Note Holders in the net proceeds from the sale of Trust Assets. The Debtors will actively market the Trust Assets and sell them at their discretion, using their business judgment. Any distributions from the Trust shall be applied to pay accrued and unpaid interest, reasonable attorney's fees and costs as allowed by the Court or agreed to by the Parties, and any remaining amounts shall be applied to reduce the principal amount of the Allowed Claim.

g) On or before the Effective Date, the Bank Group will record an appropriate release of its liens.

**2. Treatment of Bank Group Claims if the Bank Group Votes to Reject Confirmation of the Plan or if it Does Not Stipulate to Release of its Security Interest .**

a) The prepetition Claims of the Bank Group will be allowed in the above-referenced amounts (the "Allowed Claim"). The Allowed Claim will include post-petition interest through the Effective Date, at the contract rate in effect prior to January 1, 2009, or at a rate as determined by the Bankruptcy Court. The Allowed Claim will also include attorney's fees and costs in an amount agreed by the Parties, or as allowed by the Bankruptcy Court. The Bank Group agrees to provide detail of its request for attorney's fees and costs prior to the confirmation hearing. If the amounts set forth in the detail are not agreed to by the Debtors, such amounts will be determined by the Court. Any amounts in addition to the Allowed Claim shall be allowed only pursuant to order of the Bankruptcy Court.

*b)*      *Commencing on the Effective Date, interest will accrue on such Allowed Claim post-confirmation at the non-default contract rate in effect prior to January 1, 2009, or at such market rate as the parties agree or the Court orders.*

*c)*      *During the first 12 months after the Effective Date, the Debtors will make monthly interest-only payments to the Bank Group. Beginning in the 13th month after the Effective Date, the Debtors will begin making equal, monthly principal and interest payments, based upon a twenty (20) year amortization that will continue through the tenth (10th) anniversary of the Effective Date.*

*d)*      *Any remaining balance due the Bank Group will be paid in full on the tenth (10th) anniversary of the Effective Date of the Plan.*

*e)*      *The Bank Group will retain a security interest of equal priority with the Note Holders in their collateral. They will receive a pro rata share of the adequate protection payments and a pro rata share of the net proceeds from the sale of Bashas' personal property upon which they hold a valid and properly perfected security interest. The Debtors reserve the right to contest the asserted lien interests or perfection of such interests, even if funds have been segregated. Any distributions to the Bank Group from such proceeds will be applied to the outstanding interest and attorney's fees (as agreed by the Parties or in amounts ordered by the Court) with the remainder reducing the principal balance on their Allowed Claim.*

*f)*      *After the Bank Group's claim has been paid in full pursuant to the terms of the Plan, the Bank Group will record an appropriate release of its liens.*

**Class 3 claims are impaired and may vote.**

**D.**      **Class 4 – The Note Holders' Claims.** This class consists of the allowed claims of the holders of the private shelf notes issued by Bashas' in 1996, 2002, 2003, and 2005, in the prepetition amount of eighty-six million six hundred seven thousand three hundred four dollars ($86,607,304).

*1.*      **Treatment if class of Note Holders Votes in Favor of Confirmation of the Plan and Stipulates to Release of Their Disputed Security Interest.**

*a)*      *The Claims of the Note Holders will be allowed in the prepetition amount of $86,607,304 (the "Allowed Claim"). The Allowed Claim will*

*include post-petition interest at the contract rate in effect prior to January 1, 2009, or at a rate as agreed by the Parties. The Allowed Claim will also include attorney's fees and costs in an amount agreed by the Parties, or as allowed by the Bankruptcy Court. The Note Holders agree to provide detail of its request for attorney's fees and cost prior to the confirmation hearing. If the amounts set forth in the detail are not agreed to by the Debtors, such amounts will be determined by the Court. Any amounts in addition to the Allowed Claim shall be allowed only pursuant to order of the Bankruptcy Court.*

*b) Commencing on the Effective Date, interest will accrue on each Allowed Claim at the interest rate applicable to that issuance in effect prior to January 1, 2009, or at such market rate as the parties agree.*

*c) On the Effective Date, the Note Holders will be paid their proportionate share with the Allowed Claim of the Bank Group from the funds sequestered after the filing date related to the Debtors' use of cash collateral including any monthly adequate protection payments, and the net proceeds from collateral sales to be applied to pay accrued and unpaid interest, reasonable attorney's fees and costs as allowed by the Court or agreed to by the Parties, and any remaining amounts shall be applied to reduce the principal amount of the Allowed Claim.*

*d) For the first 12 months after the Effective Date, the Allowed Claims of the Note Holders will receive monthly interest only payments, at the rate applicable to each issuance, and in effect prior to January 1, 2009. Beginning on the 13th month after the Effective Date, the Allowed Claims of the Note Holders will be paid monthly payments of principal and interest, based upon a twenty (20) year amortization.*

*e) Any remaining balance due the Note Holders will be paid in full on the fifth (5th) anniversary of the Effective Date.*

*f) The Debtors will create a trust, and will be both the trustor and trustee of this trust. The trust will be funded from the net proceeds from the sale of Bashas' Liquidation Property identified on the attached Exhibit 3 (the "Trust Assets"). The Note Holders will receive a pro rata beneficial interest with the Allowed Claim of the Bank Group in the net proceeds from the sale of Trust Assets. The Debtors will actively market the Trust Assets and sell them at their discretion, using their business judgment. Any distributions from the Trust shall be applied to pay accrued and unpaid interest, reasonable attorney's fees and costs as allowed by the Court or agreed to by the Parties, and any remaining amounts shall be applied to reduce the principal amount of the Allowed Claim.*

*g) On or before the Effective Date, the Note Holders' will record an appropriate release of their liens.*

**2. Treatment of Note Holders' Claim if the Note Holders Vote to Reject Confirmation of the Plan or Do Not Stipulate to Release Their Security Interest.**

       a)    *The Claims of the Note Holders will be allowed in the prepetition amount of $86,607,304 (the "Allowed Claims"). The Allowed Claims will include post-petition interest through the Effective Date, at the contract rate in effect prior to January 1, 2009, or at a rate as determined by the Bankruptcy Court. The Allowed Claim will also include attorney's fees and costs in an amount agreed by the Parties, or as allowed by the Bankruptcy Court. The Note Holders agree to provide detail of its request for attorney's fees and costs prior to the confirmation hearing. If the amounts set forth in the detail are not agreed to by the Debtors, such amounts will be determined by the Court. Any amounts in addition to the Allowed Claim shall be allowed only pursuant to order of the Bankruptcy Court.*

       b)    *Commencing on the Effective Date each issuance will accrue interest on such Allowed Claims, applicable to that issuance, at the non-default contract rate in effect, prior to January 1, 2009, or as otherwise determined by the Court.*

       c)    *The maturity date of each note issuance will be amortized over twenty (20) years and will be all due and payable on the tenth (10th) anniversary of the Effective Date.*

       d)    *During the first 12 months after the Effective Date, the Debtors will make monthly interest-only payments to the Note Holders at the non-default contract rate of interest in effect prior to January 1, 2009. Beginning in on the 13th month after the Effective Date, the Debtors will begin making equal monthly principal and interest payments based upon a twenty (20) year amortization.*

       e)    *The Note Holders will retain a security interest of equal priority with the Bank Group in their collateral. They will receive a pro rata share of the adequate protection payments and a pro rata share of the net proceeds from the sale of Bashas' personal property upon which they hold a valid and properly perfected security interest. The Debtors reserve the right to contest the asserted lien interests or perfection of such interests, even if funds have been segregated. Any distributions to the Note Holders from such proceeds will be applied to the outstanding interest and attorney's fees (allowed as reasonable and necessary by the Court, and in amounts ordered by the Court) with the remainder reducing the principal balance on their Allowed Claim.*

       f)    *After the Note Holders' claims have been paid in full pursuant to the terms of the Plan, the Note Holders will record an appropriate release of its liens.*
**Class 4 claims are impaired and may vote.**

**E.** **Class 5 – Bashas' Secured Tax Claims.** This class consists of the prepetition secured claims of various county treasurers' offices holding first priority secured claims for payment of real and personal property taxes accruing before the filing of these bankruptcy cases.

*The Class 5 Claims will be allowed in the principal amount of the tax due, with interest at the statutory rate and without penalties. These claims accrue interest post confirmation at the applicable statutory rate. On the Effective Date, the Debtors will make a distribution to such creditors equal to 10% of such Allowed Claims. Thereafter, equal payments of principal and interest will be made to each Class 5 creditor commencing in October following the Effective Date of the Plan. Payments will be made every April and October thereafter through April 2014. Claimants will retain their statutory liens until paid in full.*

**Class 5 claims are impaired and may vote.**

**F.** **Class 6 – Bashas' Priority Tax Claims.** This class consists of the allowed unsecured priority tax claims of various cities, counties, the states of Arizona and California, the Internal Revenue Service, and several sovereign Indian nations or their subdivisions. These priority tax creditors are owed the total sum of $3,520,908 for license taxes, sales/privilege taxes, cigarette stamp taxes, and withholding taxes.

*The Class 6 Claims will be allowed in the principal amount of the tax due, with interest at the applicable statutory rate and without penalties. These claims will accrue interest post-confirmation at the applicable statutory rate. On the Effective Date, the Debtors will make a distribution to such creditors equal to 10% of each Allowed Claim. The balance of each Allowed Claim will be paid in equal monthly installments of principal and interest beginning in July following the Effective Date and continuing until July 2014.*

**Class 6 claims are impaired and may vote.**

**G.** **Class 7 – Leaseco's Priority Tax Claims.** This class consists of the allowed unsecured priority tax claims owed by Leaseco to the Arizona Department of

Transportation, the State of New Mexico and the Internal Revenue Service in the approximate total amount of fifty-three thousand four hundred and thirty-seven dollars ($53,437).

*The Class 7 Claims will be allowed in the principal amount of the tax due, with interest at the applicable statutory rate and without penalties. These claims will accrue interest post-confirmation at the applicable statutory rate. On the Effective Date, the Debtors will make a distribution to such creditors equal to 10% of such Allowed Claims. Thereafter, equal monthly payments of principal and interest will be made to each Class 7 creditor commencing in July following the Effective Date of the Plan and continuing thereafter until July 2014.*

**Class 7 claims are impaired and may vote.**

H. **Class 8 – Bashas' Priority Wage and Benefit Claims.** This class consists of the allowed unsecured priority for wages, including back pay earned within 180 days before the filing date, but only to the extent of $10,950 for each individual pursuant to §507(a)(4). This class also includes the unsecured priority claims for paid time off ("PTO") earned by certain employees in excess of their priority claims.

*Class 8 Creditors owed wages or benefits earned within 180 days before the filing to the extent of $10,950 for each individual will be paid in full on the later of the sixth (6th) month anniversary of the Effective Date, or allowance of the claim, with interest accruing on the allowed amount of the claim post confirmation at the greater of the prime interest rate as established by JP Morgan Chase Bank or 5% per annum. Class 8 Creditors will be paid by PTO benefits being extended to such employees on the sixth (6th) month anniversary of the Effective Date. Terminated employees will receive cash as provided in the Employee Manual or Employment Contract.*

**Class 8 claims are impaired and may vote.**

I. **Class 9 – Bunzl Distribution Southwest LP Claim.** This class consists of the secured claim of Bunzl Distribution Southwest, LP ("Bunzl"), asserted claim in the amount of $1,698,146.67, which is secured by a first priority security interest in and lien

on all of the following: (i) all products consigned to Bashas' by Bunzl and its subsidiaries and affiliates, (ii) all accounts, contract rights, chattel paper and any other rights to the payment of money and security therefore, now or hereafter arising from the sale, consignment or other transfer by Bashas' of any products consigned to Bashas' and (iii) all replacements, returns, substitutions, additions, accessions and proceeds of the items described in (i) and (ii) above (the "Bunzl Collateral"). The security interest granted to Bunzl was perfected prior to granting any security interests to the Lender Group. Thus, Bunzl holds a properly perfected first position security interest in the Bunzl Collateral, senior even to the Lender Group.

*1.      The Bunzl Claim shall be allowed in the amount of $1,698,146.67, which includes a previously allowed claim pursuant to 11 U.S.C. § 503(b)(9) in the amount of $536,944.68.*

*2.      Bunzl's allowed 503(b)(9) Claim shall be paid in full on the Effective Date pursuant to the Plan.*

*3.      The remaining amounts of the Allowed Bunzl Claim shall be paid without penalty or interest pursuant to the terms of Exclusive Supply Agreement dated January 1, 2009, which will be assumed pursuant to the Plan.*

*4.      The provisions of the Stipulated Final Order Between The Debtor And Bunzl Distribution Authorizing Debtors' Use Of Cash Collateral And Provision Of Adequate Protection entered on August 12, 2009 (Docket Number 337) shall continue to remain in full force and effect until the Effective Date.*

*5.      Bunzl will be permitted to retain the $250,000 deposit provided for in the cash collateral stipulation after the Effective Date. Within three months of the Effective Date, Bunzl will permit Bashas' to apply the deposit against future purchases;*

*6.      After the Effective Date, Bunzl shall continue maintain a first priority security interest in the Bunzl Collateral with the same priority and validity as existed prior to the Petition Date.*

**Class 9 claims are impaired and may vote.**

**J.     Class 10—Bashas' Secured Vendor Claims.** This class consists of the claims of vendors who provided goods and services to Bashas' pre-petition in the ordinary course of business and whose repayment is secured by advanced deposits, letters of credit, rights of setoff or recoupment, dividend pledges, or other perfected security interests provided pre-petition. Such creditors hold first position, properly perfected security interests in the collateral securing their claims. It is estimated that such creditors are fully secured. The claims of such creditors total approximately $4,500,000.00.

*NOTE: To the extent a vendor holds a claim that exceeds the amount of its pre-petition collateral, the unsecured portion of its claim will be treated as a Class 11 claim.*

*Allowed Class 10 Claims will be paid according to one of the two following alternatives:*

*OPTION A:*

***The Allowed Claims of each Class 10 creditor who agrees not to require additional deposits or alternate collateral of Bashas' going forward, and so designates its agreement on the ballot accompanying the Plan will be repaid as follows:***

*1.     Electing Claimants will be entitled to retain all pre-petition deposits, letters of credit, setoff rights and collateral as security for repayment of any pre-petition amounts owed. Such claimants will retain these rights until their claims are satisfied.*

*2.     All rights of setoff, which are undisputed by the Debtors, shall be applied to reduce such creditor's claims on the later of the Effective Date or allowance of such claims. Any cash deposits shall be applied to reduce such creditor's claims on the later of the Effective Date, or allowance of such claims.*

*3.     Any cash deposit shall be applied to reduce such creditor's claims on the later of the Effective Date, or allowance of such claims.*

*OPTION B:*

***Class 10 creditors who do not opt for Option A shall be treated as follows:***

1.      Claimants will be entitled to retain all pre-petition deposits, letters of credit, setoff rights and collateral as security for repayment of any pre-petition amounts owed. Such claimants will retain these rights until their claims are satisfied.

2.      All rights of setoff, which are undisputed by the Debtors, shall be applied to reduce such creditor's claims on the later of the Effective Date or allowance of such claims. Such claimants may not otherwise exercise their rights against such collateral for so long as Bashas' complies with the terms of its Plan.

3.      Allowed claims will accrue interest commencing on the Effective Date and until repaid in full, at the prime rate of interest as established by J.P. Morgan Chase Bank. Interest will not compound (simple interest) and will be paid annually on the anniversary of the Effective Date;

4.      Claimants holding an Allowed Claim under this Option B, will receive a distribution equal to five percent (5%) of their Allowed Claim in cash on the Effective Date;

5.      The balance of the Allowed Claims of these Creditors shall be paid through annual distributions from fifty percent (50%) of Net Cash Flow on a pro rata basis with Classes , 11, 12, 14 and 16, commencing on the first anniversary of the Effective Date and continuing on each succeeding anniversary until paid in full. Net Cash Flow shall be defined as provided in Exhibit A to the Plan of Reorganization.

6.      All Class 10 Allowed Claims plus accrued interest will be paid in full on or before the fifth anniversary of the Effective Date.

**Class 10 claims are impaired and may vote.**

**K.      Class 11 – Bashas' Unsecured Vendor Claims.** This class consists of the allowed outstanding unsecured claims of Bashas' vendors who provided prepetition goods and services in the ordinary course of business. It is estimated the claims in this class total approximately thirty million dollars ($30,000,000). Because these creditors' claims are unsecured, the Allowed Claim will not include interest postpetition.

*Allowed Class 11 Claims will be paid according to one of the two following alternatives:*

***OPTION A:***

     ***Each Class 11 unsecured creditor who agrees to the credit terms set forth below and so designates its agreement on the ballot accompanying the Plan will be repaid as follows:***

     ***1.***     *Allowed Claims will accrue interest from the Effective Date at five percent (5%) per annum compounded monthly through the first (1ˢᵗ) anniversary of the Effective Date. Beginning on the first anniversary of the Effective Date, interest will accrue at the greater of the prime interest rate as established by JP Morgan Chase Bank or 5% per annum. Beginning on the second anniversary of the Effective Date, interest will accrue at the greater of prime plus one percent (1%) or 5% per annum, and on the third anniversary, interest will accrue at the greater of prime plus two percent (2%) or 5% per annum. In the final repayment year, and to the extent that any claims remain unpaid, interest will accrue at the greater of prime plus three percent (3%) or 5% per annum until paid in full. Interest will be compounded monthly and paid annually on the anniversary of the Effective Date;*

     ***2.***     *Electing claimants will receive a payment equal to 10% of their Allowed Claim on the Effective Date;*

     ***3.***     *Commencing on the first anniversary of the Effective Date and every six months thereafter, electing claimants will receive an additional distribution equal to 5% of their Allowed Claims, until paid in full.*

     ***4.***     *In addition to the above, beginning on the first anniversary of the Effective Date, additional annual distributions will be made on Allowed Claims, on a pro rata basis with holders of claims in Classes, 10, 12, 14, and 16, from 50% of Bashas' Net Cash Flow, as defined in the Definitions Exhibit A to the Plan;*

     ***5.***     *If not re-paid sooner, all Allowed Claims and post-Effective Date Interest shall be repaid with interest in full by the fifth anniversary of the Effective Date.*

     ***6.***     *If a creditor elects treatment under this Option A, and provided Bashas' has timely and fully made all plan payments and payments for post-Effective Date goods and service to such creditor and has not otherwise demonstrated an inability to perform under the Plan or to pay its debts as they come due, the electing Creditor agrees that:*

     *a)*     *Upon the Effective Date, the creditor will permit Bashas' to apply any post-petition deposits Bashas' has provided the creditor against future purchases;*

b) within thirty days of the Effective Date, the electing creditor shall return to "normal course" credit terms (meaning those terms generally in place between the electing creditor and Bashas' prior to any changes made in spring/summer 2009, in response to Bashas' financial condition and/or the bankruptcy filing), and shall commit to provide product and/or services under such "normal course" credit terms, including the application of credits due Bashas' made cooperative merchandising agreement contracts ("CMAC Credits"), for a period of at least one year.

**OPTION B:**

*Class 11 creditors who are unwilling or unable to agree to the credit terms outlined above will be repaid as follows:*

*1. Allowed claims will accrue interest commencing on the Effective Date and until repaid in full, at the prime rate of interest as established by JPMorgan Chase Bank. Interest will not compound (simple interest) and will be paid annually on the anniversary of the Effective Date;*

*2. Creditors will receive a distribution equal to five percent (5%) of their Allowed Claim in cash on the Effective Date;*

*3. The balance of the Allowed Claims of these Creditors shall be paid through annual distributions from fifty percent (50%) of Net Cash Flow on a pro rata basis with Classes, 10,12, 14 and 16, commencing on the first anniversary of the Effective Date and continuing on each succeeding anniversary until paid in full. Net Cash Flow shall be defined as provided in Exhibit A to the Plan of Reorganization.*

*4. All Class 11 Allowed Claims plus accrued interest will be paid in full with interest on or before the fifth anniversary of the Effective Date.*

**Class 11 claims are impaired and may vote.**

**L.** **Class 12 – Bashas' Non-Vendor Unsecured Claims.** This class consists of those unsecured creditors – other than Vendors – holding Allowed Claims, including tort claimants, litigation claimants, and those holding claims for rejection damages arising from the Debtors' rejection of leases.

*Class 12 creditors will be paid a distribution in cash equal to 10% of their Allowed Claims on the later of the Effective Date or the allowance of their claim. The remaining balance of these Allowed Claims will accrue interest at the prime rate established by*

*JPMorgan Chase Bank. Interest will not compound (simple interest) and will be paid annually with the annual payments. The remaining balance will be paid in annual distributions from fifty percent (50%) of Net Cash Flow on a pro rata basis with Classes, 10, 11, 14 and 16 beginning on the first anniversary of the Effective Date, and continuing on the anniversary date of each succeeding year until paid in full. All Class 12 Allowed Claims will be paid in full on or before the fifth anniversary of the Effective Date. The definition of Net Cash Flow is set forth in the Definitions Exhibit A to the Plan.*

**Class 12 claims are impaired and may vote.**

M.     <u>**Class 13 – Bashas' Unsecured Convenience Claims**</u>. This class consists of Bashas' Vendor and Non-Vendor unsecured creditors holding Allowed Claims who would otherwise hold claims in Classes 11 or 12, but who have elected to participate in Class 13, and who hold allowed unsecured claims as of the Petition Date of $5,000 or less.

*By electing to participate in this class, each creditor forever waives any other amounts owed. On the Effective Date, each electing creditor will receive a one-time payment equal to eighty percent (80%) of their Allowed Claim, in full satisfaction of such claim.*

**Class 13 claims are impaired and may vote.**

N.     <u>**Class 14 – Leaseco's Unsecured Claims.**</u> This class consists of the allowed outstanding unsecured claims of Leaseco's unsecured creditors who provided prepetition goods and services in the ordinary course of business.

*Class 14 creditors will be paid a distribution in cash equal to 10% of their Allowed Claims on the later of the Effective Date or the allowance of their claim. The remaining balance of these Allowed Claims will accrue interest at the prime rate established by JPMorgan Chase Bank. Interest will not compound (simple interest) and will be paid annually with the annual payments. The remaining balance will be paid in annual distributions from fifty percent (50%) of Net Cash Flow on a pro rata basis with Classes, 10, 11, 12, and 16 beginning on the first anniversary of the Effective Date, and continuing on the anniversary date of each succeeding year until paid in full. All Class 14 Allowed Claims will be paid in full on or before the fifth anniversary of the Effective Date. The definition of Net Cash Flow is set forth in the Definitions Exhibit A to the Plan.*

**Class 14 claims are impaired and may vote.**

O.    **Class 15 – Leaseco's Unsecured Convenience Claims.** This class consists of Bashas' Vendor and Non-Vendor unsecured creditors holding Allowed Claims who would otherwise hold claims in Class 14, but who have elected to participate in Class 15, and who hold allowed unsecured claims as of the Petition Date of $5,000 or less.

*By electing to participate in this class, each creditor forever waives any other amounts owed. On the Effective Date, each electing creditor will receive a one-time payment equal to eighty percent (80%) of their Allowed Claim, in full satisfaction of such claim.*

**Class 15 claims are impaired and will vote.**

P.    **Class 16 – Parra Class Action Creditors**. This class consists of the named plaintiffs and unnamed plaintiffs in a class action case filed in the United States District Court for the District of Arizona entitled Parra v. Bashas' Inc., CV-02-0591-PHX-RCB. In that case the plaintiffs assert: (1) unequal pay; and (2) disparate working conditions claims. These claims are disputed and unliquidated. The plaintiffs in the Parra litigation filed two "class claims" in the bankruptcy case. Class 16 consists of both these claims. One class is by the uncertified class asserting damages for unequal pay, including interest, attorneys' fees and costs totaling thirty-six million three hundred thirty-eight thousand five hundred and sixty-eight dollars ($36,338,568). The certified Parra litigation class has separately filed a "class claim" in the bankruptcy case based on disparate working conditions that seeks payment of attorneys fees incurred by class counsel in that case. Bashas' has filed an objection to both Parra class proofs of claim.

*The named plaintiffs in the unequal pay litigation will receive a distribution equal to 10% of their Allowed Claim on the later of the Effective Date or the date their claim is allowed by order of the Bankruptcy Court. The remaining balance of their Allowed Claims will accrue interest at the prime rate established by JPMorgan Chase Bank. Interest will not compound (simple interest) and will be paid annually with the annual payments. The remaining balance will be paid in annual distributions from fifty percent (50%) of Net Cash Flow on a pro rata basis with Classes, 10, 11, 12 and 14 beginning on the first anniversary of the later of the Effective Date or the allowance of the claim(s), and continuing on the anniversary of each succeeding year until paid in full.*

*If the class of claimants in the unequal pay litigation is subsequently certified, members of the certified class will receive a distribution equal to 10% of their Allowed Claims on the later of the Effective Date or the date their claims are allowed by order of the Bankruptcy Court. The remaining balance of the certified class' Allowed Claims will accrue interest at the prime rate established by JPMorgan Chase Bank, and will receive annual distributions from fifty percent (50%) of Net Cash Flow on a pro rata basis with Classes, 10, 11, 12 and 14 beginning on the first anniversary of the later of the Effective Date or the allowance of the claim(s), and continuing on the anniversary of each succeeding year until paid in full. With respect to the disparate working conditions claim, Bashas' will take whatever corrective action is ordered by the district court, if any. Bashas' will pay for the corrective action, if any, in accordance with the district court's order(s). Any fees owed to class counsel for the disparate working conditions claim, when allowed, will be paid in accordance with the terms for payment of the class members' claims set forth above.*

*All Class 16 Allowed Claims plus accrued interest will be paid in full on or before the fifth anniversary of the later of the Effective Date or allowance of the claim(s).*

**Class 16 claims are unliquidated and disputed and will not vote.**

**Q.** **Class 17 – SERP and SEWBP Plan Beneficiaries** .This class consists of the beneficiaries of Bashas' Supplemental Executive Retirement Plans ("SERP") and the Supplemental Executive Welfare Benefit Plan ("SEWBP").

*These creditors will be deemed to have waived any claim to payment of benefits owed since the filing. The Debtors will waive any avoidance actions pursuant to §§547, 548 and 549 against these beneficiaries with respect to distributions made under the Debtors' SERP and SEWBP. The SEWBP will be modified to eliminate all current medical benefits for all "Eligible Employees" and their "Dependents" as defined by the plan. In lieu thereof, the creditors will receive an annual form of benefit, including but not*

*limited to, cash in lieu of medical coverage. The amount, timing and form of benefit in lieu*
*of coverage shall be established by the designated plan "Committee".*

**Class 17 claims are impaired and may vote.**

**R.** **<u>Class 18 – Rabbi Trust Beneficiaries</u>**. This Class consists of those current

or former employees of Bashas' who voluntarily deferred the payment of compensation

benefits and deposited these sums into a Rabbi Trust owned by Bashas' (the "Rabbi Trust

Beneficiaries").

> *The funds in the Rabbi Trust will be paid to the beneficiaries to the same extent as*
> *their prepetition contributions of funds to this account. No additional contributions have*
> *or will be made to the fund after the filing date. The beneficiaries will waive any claim to*
> *the fund between the filing date and the Effective Date. The Debtors will waive any*
> *avoidance actions against the beneficiaries pursuant to §§547, 548 and 549. The*
> *beneficiaries will be provided access to their contributions according to the Rabbi Trust*
> *provisions thirty (30) days after the Effective Date.*

**Class 18 interests are impaired and may vote.**

**S.** **<u>Class 19 – Equity Interests.</u>** This class consists of Bashas' equity holders.

Because all of Leaseco's stock is owned by Bashas', the Bashas' equity holders also

control the equity ownership of Leaseco. The same is true for Sportsman's because

Bashas' is the sole member of that limited liability company.

> *Bashas' prepetition equity holders will continue their ownership of these*
> *companies post confirmation. Other than distributions to cover actual tax obligations*
> *which may be paid from Bashas' 50% of Net Cash Flow, there shall be no distributions to*
> *Equity Interest until the claims of all higher priority classes are paid in full, with interest.*
> *Interest holders agree that other than distributions made for Equity Holders' actual tax*
> *payments, the Debtors will not transfer any assets to the Equity Holders or to entities*
> *controlled by the Equity Holders during the Plan's term of repayment, unless it can be*
> *established that such transfer is for fair market value.*

**Class 19 interests are impaired and may vote.**

Case 2:09-bk-16050-JMM    Doc 1372    Filed 02/25/10    Entered 02/25/10 09:04:48    Desc
Main Document    Page 27 of 40

## V.   <u>CRAM-DOWN OF NON-ACCEPTING CLASSES</u>

If any class of creditors for these Debtors fails to accept this Plan by the requisite statutory majorities, the Debtors reserve the right to seek confirmation of this Plan by a "cram-down" of such non-accepting class pursuant to Section 1129(b) of the Bankruptcy Code: the approval of the Plan over the dissent of non-accepting class(es). In the event the Bankruptcy Court declines to impose a "cram-down" on a non-accepting class unless certain modifications are made to the terms and conditions of such class's treatment under this Plan, the Debtors reserve the right, without re-solicitation to the extent permitted by the Code, to propose such modifications and to confirm this Plan by any required modifications, provided such modifications do not result in total extinguishment of the non-accepting class's claim.

## VI.   <u>REJECTION/ASSUMPTION OF LEASES AND EXECUTORY CONTRACTS</u>

The Debtors have been parties to leases and executory contracts for their operations. Non-debtor parties to leases rejected pursuant to this Plan shall have until 30 days after confirmation within which to file Proofs of Claim. Allowed prepetition, unsecured claims arising from the rejection of leases, are classified and paid according to Class 14 along with other non-Vendor unsecured creditors. Bashas' will assume the Pension Plan and all associated obligations in their entirety.

No provision contained herein, the Disclosure Statement, the Order Confirming the Plan of Reorganization, or section 1141 of the Bankruptcy Code, shall be construed as discharging, releasing or relieving any party (including any Debtor), in any capacity, from

any liability with respect to the Pension Plan under any law, government policy, or regulatory provision. PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability against any party as a result of the Plan of Reorganization's provisions for satisfaction, release and discharge of claims.

The Debtors will assume all necessary leases and executory contracts listed on Exhibits 7 and 12 to the Disclosure Statement. Other leases and executory contracts, not necessary to the continued operation of their businesses have been, and are hereby rejected (See Exhibits 8 and 10, attached to the Disclosure Statement). A third group of leases and executory contracts will be assumed or rejected at the Confirmation Hearing and are listed in Exhibits 9 and 11, attached to the Disclosure Statement. If your business is on this list, your contract may be rejected at confirmation. As a result, you may need to participate in the Confirmation Hearing.

Landlords whose leases were assumed are owed "cure" amounts for the period rent accrued prepetition from July 1 through July 11, 2009. The "cure" amount will be paid in accordance with the Lease Assumption Agreement or in the alternative, in full in the sixth (6th) month after the Effective Date with interest accruing on the "cure" amount post-confirmation at the rate of five percent (5%) per annum. With regard to any executory contracts or unexpired lease not addressed, the Court shall retain jurisdiction and the Debtors the ability to assume or reject upon realization of the existence of the contract or lease.

## VII.  EFFECT OF CONFIRMATION

Except for the continuing liens, claims, rights and interests of the secured creditors against the Debtors, their estates, and the property as described in the Plan and as permitted in the confirmation order, confirmation of a reorganization acts as a discharge, effective on the Effective Date, of any and all debts of the Debtors that arose any time before confirmation, including, but not limited to, all principal and all interest accrued thereon, pursuant to §1141(d)(1) of the Bankruptcy Code. Such a discharge shall be effective as to each claim, regardless of whether a proof of claim thereof was filed, whether the claim is an allowed claim or whether the holder thereof votes to accept the Plan.

## VIII.  REVESTING

Except as provided for in the Plan or confirmation order, on the Effective Date, these Debtors shall be vested with any remaining property or assets from their estates, free and clear of all claims, liens, charges, and other interests of creditors arising prior to the filing date, except as  provided by this Plan of Reorganization.

## IX.  RETENTION OF JURISDICTION

Notwithstanding confirmation or the Effective Date having occurred, the Court shall retain and have full jurisdiction as is allowed under Title 28 of the United States Code, the Bankruptcy Code, or other applicable law to enforce the provisions, purposes, and intent of the Plan, including, without limitation, any proceedings which relate to:

A.    Determination of the allowance, classification, or priority of claims and interests, costs, attorney's fees, and payment of post-petition interest, or objections thereto;

B.    Construing, implementing, enforcing, executing, or consummating the Plan, the confirmation order, any other order of the Court, any document attached as an exhibit to the Plan or contemplated by the Plan, or any other matter referred to in the Plan;

C.    Determination of all matters that are pending before the Court in the Chapter 11 Cases prior to the Effective Date or that may arise after the Effective Date;

D.    Determination of any and all applications for allowance or requests for payment of administrative claims, including, without limitation, requests for allowance and payment of compensation and expense reimbursement of professional persons;

E.    Determination of motions for the rejection, assumption, or assignment of executory contracts or unexpired leases, and determination of the allowance of any claims resulting from the rejection of executory contracts and unexpired leases.

F.    Determination of all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted prior to the closing of the Chapter 11 Cases;

G.    Modification of the Plan pursuant to §1127 of the Bankruptcy Code, prior to the Effective Date, remedy of any defect or omission in the Plan or confirmation order, reconciliation of any inconsistency within the Plan and the loan documents, so as to carry out the intent and purpose of the loan documents;

H.     Issuance of injunctions or taking such other actions or making such other orders as may be necessary or appropriate to restrain interference with the Debtors by any party with the Plan or its execution or implementation by any person.

I.     Issuance of such orders in aid of consummation of the Plan and the confirmation order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any person, to the full extent authorized by the Bankruptcy Code;

J.     Ordering the assumption or rejection of executory contracts or leases to which the Debtors are a party, which have not previously been resolved.

K.     Any determination necessary or appropriate under §505 of the Bankruptcy Code or any other determination relating to priority tax claims, taxes, tax refunds, tax attributes, and tax benefits affecting the Debtors, their estates, or the Property through the end of the fiscal year in which the Effective Date occurs;

L.     Entry of a final decree closing these Chapter 11 Cases; and

M.     Determination of such other matters, and for such other purposes, as may be provided in the confirmation order.

## X.     **MODIFICATION OF PLAN**

The Plan may be corrected or modified, prior or subsequent to Confirmation, or prior to consummation, after notice to interested parties and by Court order as provided by law.

## XI.    **RECOMMENDATION**

Bashas' Inc., Bashas' Leaseco, Inc.,  Sportsman's, LLC, and the Official Joint

Committee of Unsecured Creditors recommend that you vote in favour of this Joint Plan

of Reorganization. The Debtors and the Committee believe that confirmation of this Plan

of Reorganization is in the best interests of the creditors and equity holders.

**DATED:** February __24__, 2010.

BASHAS' INC.
BASHAS' LEASECO, INC.
SPORTSMAN'S, LLC


By___s/Edward N. Basha III_____
          Edward N. Basha III


MESCH, CLARK & ROTHSCHILD, P.C.
                - and –
MICHAEL W. CARMEL, LTD.


By___s/Michael McGrath, #6019_____
          Michael McGrath
          Attorneys for Debtors


315810

# EXHIBIT A

# "Definitions of Terms"

# DEFINITIONS OF TERMS

A capitalized term used in the Plan defined in this section shall have the meaning specified below, unless the context clearly requires otherwise. A term used in the Plan that is not defined below and that is defined in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure ("Rules") shall have the meaning ascribed to that term in the Bankruptcy Code or the Rules. Terms used in the plural shall include the singular, and terms used in the singular shall include the plural. The terms "will" and "shall" are mandatory terms which may be used synonymously and interchangeably throughout the Plan without any distinction as to their meanings or mandatory nature.

**1.** **Administrative Claim:** Administrative Claim means any claim for any cost or expense of administration in connection with the Chapter 11 case, in accordance with § 503(b) of the Code, including, without limitation:

      a. the actual, necessary costs and expenses of preserving the Debtors' estates (other than such claims or portions thereof which, by their express terms, are not due or payable before the Effective Date);

      b. the full amount of all claims for allowance of compensation for legal or other professional services or reimbursement of costs and expenses under §§ 330 and 503(b) of the Code, including but not limited to legal fees and costs; and

      c. all fees and charges assessed against the Debtors' estates under Chapter 123 of Title 28, United States Code.

**2.** **AJ's Fine Foods:** refers to one of the tradenames used by Bashas' Inc. for its gourmet and specialty stores.

**3.** **Allowed Claim:** Allowed Claim means a claim against the Debtors to the extent that:

      a. a proof of such claim was timely filed or deemed filed pursuant to § 1111(a) of the Bankruptcy Code; and

      b. which is not objected to, or which is allowed (and only to the extent allowed) by an order of the Bankruptcy Court that has become final and not subject to possible appeal, review, certiorari, or stay.

**4.** **Bank Group:** means Bank of America, N.A., Wells Fargo Bank, N.A., and Compass Bank.

5.    **Bankruptcy Case(s):** means, separately and collectively, the bankruptcy proceeding styled "In re Bashas' Inc. and related proceedings", Case No. 2:09-bk-16050-JMM, and each of the following bankruptcy proceedings jointly administered therewith: Bashas' Leaseco, Inc., No. 2:09-bk-16051-JMM and Sportsman's, LLC, No. 2:09-bk-16052-JMM.

6.    **Bankruptcy Code:** Bankruptcy Code shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

7.    **Bashas' Dine Markets:** refers to one of the tradenames used by Bashas' Inc. for its stores operated on the Navajo Nation, Apache, and Tohono O'odham reservations.

8.    **Bashas' Inc.:**  refers to Bashas' Inc., an Arizona corporation, and the Chapter 11 Debtor in possession in case number 2:09-bk-16050-JMM.

9.    **Bashas' Leaseco, Inc.:**  refers to Bashas' Leaseco, Inc., an Arizona corporation, and the Chapter 11 Debtor in possession in case number 2:09-bk-16051-JMM.

10.    **Bashas' Supermarkets:** refers to one of the tradenames used by Bashas' Inc. for its traditional grocery stores.

11.    **Confirmation Date:** The date on which the Bankruptcy Court enters the Confirmation Order.

12.    **Confirmation Hearing:** The hearing regarding confirmation of the Joint Plan conducted pursuant to Bankruptcy Code § 1128, 11 U.S.C. § 1128, including any adjournment or continuation of that hearing from time to time.

13.    **Confirmation Order:** The order confirming the Plan pursuant to Bankruptcy Code § 1129, 11U.S.C. § 1129.

14.    **Court:** Court or Bankruptcy Court means the United States Bankruptcy Court for the District of Arizona and, with respect to the Bankruptcy Cases, any other court which may have jurisdiction over such proceeding.

15.    **Creditor:** This term will refer to and mean "creditor" as defined in Bankruptcy Code § 101(10), 11 U.S.C. § 101(10), and will include every holder of a Claim, whether or not such Claim is an Allowed Claim.

**16.** **Debtors:** This term collectively means Bashas' Inc., an Arizona corporation, Bashas' Leaseco, Inc., an Arizona corporation, and Sportsman's, LLC, an Arizona limited liability company.

**17.** **Debtors' Professionals:** Any and all professionals which the Debtors retain to assist in this bankruptcy matter or to provide professional services for a specified special purpose, all in accordance with Bankruptcy Code §§ 327(a) and 327(e), 11 U.S.C. § 327(a) and 327(e).

**18.** **DIP Loans:** This term shall mean all borrowing authorized by the DIP Order in the total amount of up to $14,000,000.

**19.** **Disclosure Statement:** The Joint Disclosure Statement in its present form or as it may be altered, amended, or modified.

**20.** **Disputed Claim:** Every Claim which is not an Allowed Claim.

**21.** **Effective Date:** Effective Date shall mean thirty (30) days after the date of the Order entered by the Court confirming the Plan (the "Confirmation Date"), unless stayed by Court order.

**22.** **Equity Security Holders:** This term refers to equity holders of the Debtors as established according to applicable law, and based on the applicable operative documents for such entities.

**23.** **Estate:** The bankruptcy estates of the Debtors under Bankruptcy Code §541.

**24.** **Food City:** refers to one of the tradenames used by Bashas' Inc. for its low price format, offering a full range of ethnic and Hispanic food varieties.

**25.** **General Unsecured Claim:** Every Unsecured Claim against the Debtors, which will be classified and paid under the Plan as provided therein, and which is not an Administrative Expense, a Priority Unsecured Claim, or a Secured Claim.

**26.** **Grace Funding Group, LLC:** refers to the Debtors' pre-petition lender which holds a security interest in the Debtors' real property assets.

**27.** **Insider:** Every individual and entity which is (or was at the time the claim arose) an "insider" as defined in Bankruptcy Code § 101(31), 11 U.S.C. § 101(31).

**28.** **Lease Rejection Claims:** refers to the unsecured lease rejection claims of the Debtors' former landlords.

**29.** **Lender Group:** refers to the Bank Group and the Note Holders, collectively.

**30.** **Liquidation Property:** refers to Bashas' real and personal property that will be liquidated pursuant to the Plan to fund payments to the Bank Group and Note Holders pursuant to Treatment 1.

**31.** **Litigation Claims:** refers to tort, employment, or other claims asserted against Bashas' prepetition and currently pending in state or federal courts.

**32.** **Net Cash Flow:** shall mean **EBITDA** plus collection of vendor deposits and reductions in prepaid inventory, less interest payments, less payments under the Plan of Reorganization for all creditor classes, less capital expenditures, less payments to pension plans, all not to exceed the figures estimated in Debtors' financial projections attached at Exhibit 4 of the Disclosure Statement.

> "**EBITDA**" shall mean Consolidated Net Earnings before interest, income taxes, depreciation, amortization computed according to the Company's **Internally Prepared Financial Reports.** The report and computation shall be in a manner consistent with the Company's historic preparation and presentation of monthly interim financial statements and reports and computation of EBITDA.
>
> "**Internally Prepared Financial Reports**" shall mean monthly unaudited non-GAAP internal profit/loss statements prepared in accordance with the Company's accounting policies and procedures. The profit/loss statements prepared in such a manner provide the Company's management with information necessary to make internal operating decisions but do not provide-information comparable with external reporting of other entities in the same-industry.

**33.** **Non-Vendor Claimants:** refers to all holders of unsecured claims against Bashas' Inc. other than Vendors, those electing treatment as Convenience Class creditors, the Parra claimants, SERP, SEWPB, Rabbi Trust and PBCG claimants. This class includes but is not limited to lease rejection claimants, tort creditors, and litigation creditors.

**34.** **Note Agreements:** refers to the Note Purchase Agreement and Private Shelf Agreement dated February 15, 1996, July 19, 2002, December 12, 2003, and June 22, 2005.

**35.** **Note Holders:** means The Prudential Insurance Company of America, Northern Life Insurance Company, Hartford Life Insurance Company, Reliastar Life

5

Insurance Company, Pruco Life Insurance Company, Prudential Retirement Insurance and Annuity Company, and United of Omaha Life Insurance Company.

**36.** **PACA Claims:** refers to the Perishable Agricultural Commodities Act claims.

**37.** **PASA Claims:** refers to claims under the Packers' and Stockyards' Act.

**38.** **PBGC:** refers to the Pension Benefit Guarantee Corporation.

**39.** **PIM:** refers to Prudential Investment Management, Inc.

**40.** **Plan:** Plan means this Joint Chapter 11 Plan proposed by the Debtors, including any amendment or modification made in accordance with the applicable provisions of the Code.

**41.** **Petition Date:** means July 12, 2009, the filing date of the voluntary Chapter 11 petitions commencing the Bankruptcy Cases for all of the Debtors.

**42.** **Priority Unsecured Claim:** Every Unsecured Claim against the Debtors which is not an Administrative Expense or a Secured Claim, and which is asserted by the Creditor holding such Claim to be entitled to priority under any applicable provision(s) of 11 U.S.C. § 507.

**43.** **Rabbi Trust:** refers to those current or former employees of the Debtors who voluntarily deferred payment of compensation benefits and deposited such sums into a Rabbi Trust on deposit in a separate account at Wells Fargo Bank, N.A.

**44.** **Secured Claim:** Every Claim against the Debtors (including every secured portion of a Claim which is not fully secured) which is allowed in which the Creditor holding such Claim is secured by a lien, security interest, or assignment encumbering property in which the Debtors have an interest; provided, however, that such Claim will be a Secured Claim only to the extent of the validity, perfection, and enforceability of the claimed lien, security interest, or assignment and only to the extent of the value of the interest of the Creditor holding such claim against such property of the Debtors.

**45.** **Secured Creditor:** Every Creditor who holds a Secured Claim in these Cases.

**46.** **SERP:** refers to the Supplemental Employees' Retirement Plan.

47.    **Sportsman's, LLC:**  refers to Sportsman's, LLC, an Arizona limited liability company, and the Chapter 11 Debtor in possession in case number 2:09-bk-16052-JMM.

48.    **SEWBP:** refers to the Supplemental Employee's Welfare Benefit Plan.

49.    **The Parra Class Action:** refers to a claim filed by Jose Parra and seven other employees with the Equal Employment Opportunity Commission, resulting in a class action filed by Jose Parra in the United States District Court for the District of Arizona, alleging discrimination against Hispanic employees with respect to pay, promotion and working conditions.

50.    **UFCW:**  refers to Bashas' claims against the United Food and Commercial Workers International Union ("UFCW") and its alleged co-conspirators for intentional interference with Debtor's business expectancies, defamation, injurious falsehood, violations of A.R.S. §13-2314.04 (state RICO), trespass, breach of contract, breach of the implied covenant of good faith and fair dealing against Campesina, and tortious interference with contractual relations.

51.    **Unsecured Convenience Class:** refers to the Debtors' general unsecured creditors holding prepetition claims not exceeding five thousand dollars ($5,000).

52.    **Unsecured Creditor:** Every Creditor allowed an Unsecured Claim in these Cases.

53.    **Unsecured Vendor Claim:** refers to the outstanding unsecured claims of Debtors' vendors who provided prepetition goods and services in the ordinary course of business, regardless of the priority of such Claim, which is not a Secured Claim, Administrative Expense, or other designated claim.

54.    **Vendor:**  those parties who provide goods or services to the Debtors in exchange for a contemporaneous payment, or pursuant to terms for payment for a term not exceeding forty-five (45) days.

307500