| | |
|---|---|
| Robert J. Miller, Esq. (#013334) | Steven Wilamowsky, Esq. SW-9266 |
| Bryce A. Suzuki, Esq. (#022721) | (admitted *pro hac vice*) |
| **BRYAN CAVE LLP** | **BINGHAM McCUTCHEN LLP** |
| Two North Central Avenue, Suite 2200 | 399 Park Avenue |
| Phoenix, Arizona 85004-4406 | New York, New York 10022 |
| Telephone: (602) 364-7000 | Telephone (212) 705-7960 |
| Facsimile: (602) 364-7070 | Facsimile (212) 702-3607 |
| Email: rjmiller@bryancave.com | Email: steven.wilamowsky@bingham.com |
| bryce.suzuki@bryancave.com | |
| | Gerald K. Smith, Esq. (#001428) |
| Brian C. Walsh, Esq. | Thomas A. Gilson, Esq. (#022460) |
| **BRYAN CAVE LLP** | **LEWIS AND ROCA LLP** |
| 211 North Broadway, Suite 3600 | 40 North Central Avenue |
| St. Louis, MO 63102-2750 | Phoenix, Arizona 85004-4429 |
| Telephone: (314) 259-2000 | Telephone (602) 262-5348 |
| Facsimile: (314) 259-2020 | Facsmile (602) 734-3834 |
| Email: brian.walsh@bryancave.com | Email: gsmith@lrlaw.com |
| | tgilson@lrlaw.com |

Counsel for Wells Fargo Bank, N.A.,
Bank of America, N.A., and Compass Bank

Counsel for The Prudential Insurance Company of America, Hartford Life Insurance Company, Reliastar Life Insurance Company, Pruco Life Insurance Company, Prudential Retirement Insurance and Annuity Company, United of Omaha Life Insurance Company, PRUCO Life Insurance Company of New Jersey, and Universal Prudential Arizona Reinsurance Company

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| BASHAS' INC.,<br>BASHAS' LEASECO INC.,<br>SPORTSMAN'S, LLC,<br><br>Debtors.<br><br>―――――――――――――――<br>This filing Applies to:<br><br>☒ ALL DEBTORS<br>☐ SPECIFIED DEBTORS: | Chapter 11<br><br>Case Nos.  2:09-bk-16050-JMM<br>　　　　　　2:09-bk-16051-JMM<br>　　　　　　2:09-bk-16052-JMM<br><br>(Jointly Administered under 2:09-bk-16050-JMM)<br><br>**APPLICATION FOR ALLOWANCE AND PAYMENT OF DEFAULT INTEREST OF LENDER GROUP**<br><br>**Hearing Date: Not Yet Set** |

678644.3

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

Wells Fargo Bank, N.A., Bank of America, N.A., and Compass Bank (collectively, the "Bank Group"), and The Prudential Insurance Company of America and the above-captioned affiliated note holders (the "Note Holders" and, collectively with the Bank Group, the "Lender Group"), by and through their duly authorized counsel, hereby submit this Application for the allowance and payment of default interest as part of their claims against the above-captioned debtors (the "Debtors").

Pursuant to Section 506(b) of the Bankruptcy Code and applicable non-bankruptcy law, the Lender Group is entitled to recover default interest as provided in their loan and security documents with the Debtors. Accordingly, the Lender Group submits this Application for the default interest that has accrued on their loans to the Debtors between the bankruptcy petition date and August 28, 2010, in the aggregate amount of $5,736,878. This Application is more fully supported by the accompanying memorandum of points and authorities, the attached exhibits, and the entire record in these Chapter 11 cases.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I. FACTUAL AND PROCEDURAL BACKGROUND.**

1. The Lender Group is owed approximately $200 million in the aggregate in principal and non-default interest, as follows:

|  | **Wells Fargo** | **BofA** | **Compass** | **Note Holders** | **Total** |
|---|---|---|---|---|---|
| **Principal** | $ 46,068,740 | $ 44,191,597 | $ 20,020,899 | $ 86,286,984 | $ 196,568,221 |
| **Pre-Petition Interest** | 225,700 | 214,250 | 7,500 | 320,319 | 767,769 |
| **Post-Petition Interest** | 1,733,449 | 1,658,081 | 753,673 | 6,841,013 | 10,986,216 |
| **Total** | $ 48,027,889 | $ 46,063,929 | $ 20,782,072 | $ 93,448,316 | $ 208,322,206 |

2. The Debtors do not dispute the foregoing principal and non-default interest amounts owed to the Lender Group.

3. Under the Debtors' plan of reorganization as modified and confirmed by this Court (the "Plan"), the Lender Group's claims are allowed oversecured claims. The Plan, however, reserved the issues of the Lender Group's entitlement to fees and expenses, and default

interest.[1] By this Application, the Lender Group seeks allowance of its claims for default interest.

    4.    The Lender Group respectfully submits that it is entitled to its contractual default interest accruing between the date of the Debtors' default and the effective date of the Plan.

    5.    The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on July 12, 2009 (the "Petition Date").

    6.    The Bank Group has had a lending relationship with the Debtors for many years. In December 2002, debtor Bashas' Inc. ("Bashas") entered into an amended and restated credit agreement with the Bank Group (as amended from time to time, the "Credit Agreement").[2] Under the Credit Agreement, the Bank Group made a revolving line of credit available to Bashas in the maximum principal amount of $110 million.

    7.    Like the Bank Group, the Note Holders have a longstanding lending relationship with the Debtors. Bashas entered into four separate shelf agreements with Prudential entities, dated February 15, 1996, July 19, 2002, December 12, 2003, and June 22, 2005 (collectively, the "Note Agreements"). The 1996 Agreement and the 2002 Agreement were entered into with The Prudential Insurance Company of America, and the 2003 Agreement and the 2005 Agreement were entered into with Prudential Investment Management, Inc.

    8.    Under the Note Agreements, Bashas issued nine different series of notes: the 10.25% Senior Notes due 07/14/11, the 8.15% Senior Notes due 09/30/12, the 7.50% Senior Notes due 06/03/13, the 7.74% Senior Notes due 02/25/14, the 7.06% Senior Notes due 03/22/11, the 7.57% Senior Notes due 09/11/11, the 9.02% Senior Notes due 08/28/16, the 8.50% Senior Notes due 03/31/14, and the 8.85% Senior Notes due 9/27/17.

---

[1] The Plan also reserved the issue of the Note Holders' entitlement to contractual yield-maintenance amounts. Both the Lender Group's application for reimbursable fees and expenses and the Note Holders' yield-maintenance claims are or will be the subject of separate pleadings.

[2] The relevant factual background is set forth in, and the relevant loan and security documents are attached to, the *Declaration of Thomas F. McKeever on Behalf of Wells Fargo Bank, N.A., Collateral Agent* [DE #399], which is incorporated herein by reference. Capitalized terms not otherwise defined herein have the meanings ascribed to them in the foregoing declaration.

9.  Section 2.9(c) of the Credit Agreement provides that while any Event of Default exists and is continuing or after acceleration, interest on the loans provided under the Credit Agreement shall bear interest at a rate per annum equal to the applicable non-default rate plus 300 basis points.

10. At all relevant times, the default rate of interest on the Debtors' indebtedness to the Bank Group has been 7.5% —300 basis points above the non-default rate of 4.5% established under the Credit Agreement as amended. For the period of July 12, 2009 through August 28, 2010, the total amount of default interest that has accrued is $3,785,833, as follows: (i) Wells Fargo - $1,583,167; (ii) Bank of America – $1,514,333; and (iii) Compass Bank – $688,333.

11. The Note Agreements provide for non-default interest rates of: 10.25% due 7/14/11; 8.15% due 9/30/12; 7.50% due 6/3/13; 7.74% due 2/25/14; 7.06% due 3/22/11; 7.57% due 9/11/11; 9.02% due 8/28/16; 8.50% due 3/31/14; and 8.85% due 9/27/17. On April 14, 2009, the Debtors entered a Limited Waiver/Modification Agreement of the 1996, 2002, 2003 and 2005 Note Agreements which stated "[c]ommencing as of January 1, 2009, each of the Notes shall bear interest at a rate per annum that is 2.75% per annum in excess of the rate that was in effect immediately prior to January 1, 2009 (and, following January 1, 2009, any applicable default rate applicable to each of the Notes shall be increased commensurately)." Each Note states that default interest shall be "at a rate per annum from time to time equal to the greater of (i) 2% over the Interest Rate specified above or (ii) 2% over the rate of interest publicly announced by JPMorgan Chase Bank from time to time in New York City as its prime rate." For the period of July 12, 2009 through August 28, 2010, the total amount of default interest that has accrued under the Notes is $1,951,044.58.

12. Between the problems with the national and local economy and a series of bad business decisions, the Debtors were in dire straits when the parties executed their fourth amendment to the credit agreement on April 14, 2009 (the "Fourth Amendment").

13. The Fourth Amendment was a "band-aid" designed to temporarily provide the Debtors access to more liquidity and relief from covenant defaults. In exchange, the Lender Group received guaranties from debtors Bashas' Leaseco Inc. and Sportsman's, LLC, as well as

liens on substantially all of the Debtors' personal property assets and other negotiated protections such as revised covenants.

14. At the time of the Fourth Amendment, the Debtors and the Lender Group had a common goal of trying to reach a more global resolution in the context of an overall restructuring and amended credit agreement. It is clear now that the Debtors, during this same time frame, were planning bankruptcy filings with a principal purpose of attacking the liens granted to the Lender Group pursuant to the Fourth Amendment.

15. Between April 14, 2009 and the July 12, 2009 petition date, the Debtors received additional advances from the Bank Group in excess of $58 million. At the same time, however, the Debtors were secretly working with Grace Financing Group, LLC on a financing transaction involving the Debtors' real property collateral.

16. Two days before the bankruptcy filings, the Debtors secretly borrowed $2.0 million from Grace Financing Group and gave it a lien on substantially all of the Debtors' real estate assets.

17. The Debtors' secret loan from Grace Financing Group constituted a material default under the Credit Agreement, including without limitation Section 7.7(a) thereof.

18. The Grace loan also constituted a default under the Note Agreements of the Note Holders, including without limitation Section 7A(v) thereof.

19. After the Debtors obtained the secret loan from Grace Financing and "maxed out" their lines of credit with the Bank Group, they filed their bankruptcy petitions on July 12, 2009.

20. The Debtors' bankruptcy filings constituted an additional default under the Credit Agreement, including without limitation Section 8.1(h) thereof; and an additional default under the Note Agreements, including without limitation Section 7A(viii) thereof.

21. Under Section 2.9(c) of the Credit Agreement, default interest began to accrue on the Bank Group debt at the non-default rate plus 300 basis points, or 7.5%.

22. Default interest began to accrue on the Note Holder debt at the applicable non-default rate for each Note, plus 2%.

## II. **LEGAL ANALYSIS.**

It is beyond dispute that the Lender Group is entitled to default interest as part of its claims. Section 506(b) of the Bankruptcy Code provides: "To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." 11 U.S.C. § 506(b).

Unlike the fee provision of Section 506(b), the interest provision is not subject to a reasonableness limitation. *See* 11 U.S.C. § 506(b) (" . . . there shall be allowed to the holder of such claim, interest on such claim . . ."). Thus, when an oversecured creditor seeks interest on its claim, a bankruptcy court is required to apply the interest rate specified in the parties' contract. *See General Elec. Capital Corp. v. Future Media Prods. Inc.*, 547 F.3d 956, 960-61 (9th Cir. 2008); *In re 268 Ltd.*, 789 F.2d 674, 676 (9th Cir. 1986). With respect to default interest specifically, a court should apply "the contracted default rate, provided that the rate is not unenforceable under applicable non-bankruptcy law." *GE Capital Corp.*, 547 F.3d at 961 (internal quotation omitted).

The foregoing rule is indisputably the law in the Ninth Circuit, as mandated by the Supreme Court's ruling in *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, 549 U.S. 443 (2007), which recognizes the primacy of "the underlying substantive law creating the debtor's obligation." *Travelers*, 549 U.S. at 449; *see also GE Capital Corp.*, 547 F.3d at 960 ("We read *Travelers* to mean the default rate should be enforced, subject only to the substantive law governing the loan agreement . . . ."). Arizona law does not limit the amount of default interest a borrower may be charged in a commercial loan pursuant to a contractual default-interest provision. *See* A.R.S. § 44-1201 (if contracted for, "any rate of interest may be agreed to").

In this case, based on their agreements with the Debtors, the Lender Group seeks default interest for the period between the bankruptcy petition date and August 28, 2010, as follows:

|   |   |   |
|---|---|---|
| Wells Fargo Bank: | $1,583,167 |
| Bank of America: | $1,514,333 |
| Compass Bank: | $ 688,333 |
| Note Holders: | <u>$1,951,045</u> |
| Total: | $5,736,878 |

The default interest sought is permitted by Arizona law and was agreed to by financially sophisticated debtors. There is no legal or equitable basis to deprive the Lender Group of its bargained-for right to default interest. The foregoing amounts should be included in the Lender Group's claims.

## III. <u>CONCLUSION</u>

Based on the foregoing, the Lender Group respectfully requests that the Court enter an Order:

A. Approving as part of the Lender Group's claims default interest in the aggregate amount of $5,736,878.00; and

B. Awarding the Lender Group's fees and expenses incurred in connection with the filing and prosecution of this Application; and

C. Granting the Lender Group such other and further relief as the Court deems just and proper under the circumstances.

RESPECTFULLY SUBMITTED this 29th day of October, 2010.

**BRYAN CAVE LLP**

By: /s/ BAS, #022721
    Robert J. Miller
    Bryce A. Suzuki
    Two North Central Avenue, Suite 2200
    Phoenix, Arizona 85004-4406

Counsel for Wells Fargo Bank, N.A., Bank of America, N.A., and Compass Bank

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

**BINGHAM McCUTCHEN LLP**
and
**LEWIS AND ROCA LLP**

By: /s/ BAS, for Thomas A. Gilson w/permission
   Gerald K. Smith
   Thomas A. Gilson
   40 North Central Avenue
   Phoenix, Arizona 85004-4429

   Counsel for The Prudential Insurance Company of America, Hartford Life Insurance Company, Reliastar Life Insurance Company, Pruco Life Insurance Company, Prudential Retirement Insurance and Annuity Company, United of Omaha Life Insurance Company, PRUCO Life Insurance Company of New Jersey, and Universal Prudential Arizona Reinsurance Company

COPY of the foregoing served via e-mail this ___ day of October, 2010, upon:

| | |
|---|---|
| Michael McGrath, Esq.<br>Frederick J. Petersen, Esq.<br>MESCH, CLARK & ROTHSCHILD, P.C.<br>259 North Meyer Avenue<br>Tucson, Arizona 85701<br>mmcgrath@mcrazlaw.com<br>fpetersen@mcrazlaw.com<br>Attorneys for Debtors | Michael W. Carmel, Esq.<br>MICHAEL W. CARMEL, LTD.<br>80 E. Columbus<br>Phoenix, Arizona 85012-2334<br>michael@mcarmellaw.com<br>Attorneys for Debtors |

   /s/ Sally Erwin